**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| DAVE CARLTON and SHARON KEGERREIS, Individually and On Behalf of All Others Similarly Situated,<br><br>                Plaintiff,<br><br>   v.<br><br>FRED CANNON, JOHN K. KARNES, and VINOD KHOSLA,<br><br>                Defendants. | Case No. 4:15-CV-00012<br><br>**VINOD KHOSLA'S REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Hearing Date:     June 17, 2015<br>Hearing Time:     8:30 a.m.<br>Hearing Location: Courtroom 11-B |

944587

## **TABLE OF CONTENTS**

**Page**

A. The Third Amended Complaint is insufficient as to Khosla under controlling Fifth Circuit law mandating that a control-person defendant must have at least the ability to control (i) the primary violator's day-to-day operations; and (ii) the specific alleged fraud. ..................................................2

B. Plaintiffs do not (and cannot) explain how the facts alleged could establish control; instead, Plaintiffs just repeat those insufficient allegations........................6

C. The new allegations Plaintiffs added in their opposition brief do not support a control-person claim, either. ..................................................................10

D. Plaintiffs cannot rely on a liberal pleading standard to excuse their failure to plead specific facts that would establish control. ...............................................11

E. Plaintiffs' addition of new but inadequate allegations in their opposition brief further demonstrates why leave to amend should be denied.........................12

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abbott v. Equity Grp.*
  2 F.3d 613 (5th Cir. 1993) ..................................................................................................2, 3

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ......................................................................................................11, 12

*Bell Atl. Corp. v. Twombly*
  550 U.S.544 (2007) .................................................................................................7, 11, 12

*Burlington N. Ry. Co. v. Brotherhood of Maintenance of Way Employees*
  961 F.2d 86 (5th Cir. 1992) ...................................................................................................3

*Coates v. Heartland Wireless Commc'ns, Inc.*
  55 F. Supp. 2d 628 (N.D. Tex.. 1999) .................................................................................11

*Davidco Investors LLC v. Anchor Glass Container Corp.*
  No. 04-cv-2561, 2006 U.S. Dist. LEXIS 11527, at *85-86 (M.D. Fla. March 6, 2006) ...........10

*Dennis v. General Imaging*
  918 F.2d 496, 509 (5th Cir. 1990) ................................................................................2, 3, 8

*G.A. Thompson & Co. v. Partridge*
  636 F.2d 945, 958 (5th Cir. 1981) ................................................................................2, 3, 9

*Heck v. Triche*
  775 F. 3d 265, 283 (5th Cir. 2014) ........................................................................................3

*In re ArthroCare Corp. Sec. Litig.*
  726 F. Supp. 2d 696 (W.D. Tex. 2010) .................................................................................4

*In re Enron Corp. Sec. Derivative and ERISA Litig.*
  No. H-01-3624, 2003 U.S. Dist. LEXIS 1668 (S.D. Tex. Jan. 28, 2003) .................................12

*In re Enron Corp. Sec. Litig.*
  235 F. Supp. 2d 549 (S.D. Tex. 2002) ...................................................................................8

*In re Franklin Bank Corp. Sec. Litig.*
  782 F. Supp. 2d 364 (S.D. Tex. 2011) ...................................................................................8

*In re Global Crossing, Ltd. Sec. Litig.*
  No. 02-Civ. 910, 2005 U.S. Dist. LEXIS 1628 (S.D.N.Y. Aug. 8, 2005) ..............................5, 7

*In re Kosmos Energy Ltd. Sec. Litig.*
   955 F. Supp. 2d 658 (N.D. Tex. 2013) ..................................................................................7

*Langston v. San Jacinto Jr. Coll.*
   25 F. Supp. 3d 1009, 1016 (S.D. Tex. 2014) ......................................................................11

*Meek v. Howard, Weil, Labouisse, Friedrichs, Inc.*
   95 F.3d 45 (5th Cir. 1996) ....................................................................................................4

*Metge v. Baehler*
   762 F.2d 621 (8th Cir 1985) .................................................................................................3

*Roebuck v. Dothan Sec., Inc.*
   515 F. App'x 275 (5th Cir. 2013) ........................................................................................11

*SEC v. Imperiali*
   594 F. App'x 957 (11th Cir. 2014) ........................................................................................9

*SEC v. Jackson*
   908 F. Supp. 2d 834 (5th Cir. 2012) ......................................................................................4

*Shepherd v. S3 Partners, LLC*
   No. 09-1405-RSW, 2011 U.S. Dist. LEXIS 117957, at *18 (N.D. Cal. Oct. 12, 2011) .......9, 10

*Zagami v. Natural Health Trends Corp.*
   540 F. Supp. 2d 705 (N.D. Tex. 2008) ..................................................................................4

**Treatises**

17A Hicks, Civil Liabilities: Enforcement & Litigation Under the 1933 Act § 7:10......................2

Viccarando, "Liability Under the Federal Securities Laws ...........................................................2

Plaintiffs' Opposition brief further undermines their fantastical accusation that Vinod Khosla—who provided KiOR with several loans, did not sell a single share of KiOR stock during the class period, and intends to fund KiOR's exit from bankruptcy—also somehow knew the entire time that the company was not viable.  *See* Opp'n Br. at 58.  Plaintiffs do not articulate a single valid basis for maintaining their claim that Khosla should be held liable as a "control person" of KiOR, Cannon, or Karnes.  They do not point to a single fact in their Third Amended Complaint (or outside of it) that would suggest Khosla had the power to control KiOR's alleged misstatements, let alone the company's day-to-day operations—yet their control-person claim requires both.

Plaintiffs failed to identify a single company decision or action that they claim Khosla had the power to control.  Instead, Plaintiffs resort to: (i) desperately (and falsely) accusing Khosla of misstating the law; (ii) re-hashing their allegations without addressing the law outlined in Khosla's moving papers demonstrating that those allegations do not establish control; and (iii) clinging to a "liberal" pleading standard to excuse their failure to plead facts sufficient to state a case.

The Court should dismiss the claim against Khosla with prejudice.  Plaintiffs have had multiple chances to state a claim against Khosla and have failed.  They should not be afforded what would amount to a sixth opportunity to plead their claims.[1]  Indeed, Plaintiffs do not even request leave to re-plead, and their addition of new but ineffectual allegations in their opposition brief further demonstrates that amendment would be futile.

---

[1] Plaintiffs have filed four iterations of their complaint and then added additional allegations in their opposition brief.  Thus, any further amended complaint would amount to Plaintiffs' sixth round of allegations.

1

> **A.** **The Third Amended Complaint is insufficient as to Khosla under controlling Fifth Circuit law mandating that a control-person defendant must have at least the ability to control (i) the primary violator's day-to-day operations; and (ii) the specific alleged fraud.**

Although Fifth Circuit law is unsettled as to the precise showing that a plaintiff must make for a control-person claim, it certainly requires, *at a minimum*, that the plaintiff show that the defendant had the power to control both (i) the primary violator's general operations; and (ii) the underlying specific misstatements. *Abbott v. Equity Grp.* 2 F.3d 613, 6190-20 (5th Cir. 1993)[2]. An examination of the Fifth Circuit's controlling decisions addressing the control-person standard confirms these minimum requirements and demonstrates that plaintiffs have failed to allege facts sufficient to state a claim against Khosla.

*First*, in *G.A. Thompson & Co. v. Partridge*, the Fifth Circuit held in 1981 that a plaintiff did not need to plead "participation in the wrongful transaction" as an element of a control-person case, and that "lack of participation and good faith constitute an affirmative defense for a controlling person." 636 F.2d 945, 958 (5th Cir. 1981). While the defendant contended that he could not be a control person as a matter of law, the court rejected that contention because the defendant was (i) an officer, a director, and a 24% stockholder; *and* (ii) was involved in the company's loan gathering. *Id.* at 958. Thus the court made its control-person determination after considering both the defendant's *ability* to control the company's general affairs and his *involvement* in activities related to the underlying primary violation. *Id.*

Nine years later, in *Dennis v. General Imaging*, the Fifth Circuit in 1990 stated that "[t]o make out a prima facie case of a Section 15 or Section 20 violation against defendants . . .

---

[2] Commentators agree that this is the standard in the Fifth, Seventh, Eighth and Tenth Circuits. *See, e.g.*, 17A Hicks, Civil Liabilities: Enforcement & Litigation Under the 1933 Act § 7:10 (the control-person standard under the 1933 and 1934 Acts is the same, *see* Khosla Opening Br. at 4 n.4); Viccarando, "Liability Under the Federal Securities Laws," page 131, *available at* http://wlrk.com/docs/OutlineofSecuritiesLawLiabilities2013.pdf

944587

plaintiff must prove that 1) each had actual power or influence over the controlled person and 2) each induced or participated in the alleged violation." 918 F.2d 496, 509 (5th Cir. 1990). Although a subsequent Fifth Circuit panel stated in dicta that "*Dennis* does not accurately reflect our rejection in *Thompson* of a 'culpable participation' requirement,"[3] *Thompson* and *Dennis* do not conflict because *Dennis* does not require a plaintiff to allege *actual participation* in the underlying alleged wrongdoing. Rather, the second prong of the *Dennis* test requires a plaintiff to plead that the alleged control person participated in **or induced** the alleged wrongdoing. 918 F.2d at 509.

*Abbott*, 2 F3d 613, provided further clarification. In this case the Fifth Circuit confirmed that *Dennis* required "a separate showing of control over the controlled **entity**." There, the defendants were involved in the allegedly fraudulent transactions, but the plaintiffs failed to show that the defendants had the power to control the company's "general affairs." *Id* at 620. Thus, the Fifth Circuit affirmed summary judgment for defendants where the plaintiffs failed to satisfy the first prong of the *Dennis* test (power or influence over the company generally).

The *Abbott* court also indicated that the Eighth Circuit in *Metge v. Baehler*, 762 F.2d 621 (8th Cir 1985), relied on the Fifth Circuit's *Thompson* case for a second prong, that in addition to a showing of control over the corporation "in general", there needed to be a showing of control over the "specific transaction at issue." *Abbott*, 2 F.3d at 620.

Most recently in *Heck v. Triche*, the Fifth Circuit explained that "a plaintiff 'must at least show that the defendant had an ability to control *the specific transaction or activity* upon which

---

[3] *Abbott*, 2 F.3d at 620 n.18. The statement is dicta because the *Abbott* court acknowledged that it "need not resolve this inconsistency" between *Dennis* and *Thompson*, because the *Abbott* court's holding turned on the plaintiff's failure to establish the defendants' power to control the company itself. *Id.* Moreover, even if the statement in *Abbott* were not dicta, the *Abbott* panel could not overrule the *Dennis* panel's decision. *See Burlington N. Ry. Co. v. Brotherhood of Maintenance of Way Employees*, 961 F.2d 86, 89 (5th Cir. 1992).

3

the primary violation is based'" 775 F. 3d 265, 283 (5th Cir. 2014). The court quoted from a 1996 unpublished opinion, *Meek v. Howard, Weil, Labouisse, Friedrichs, Inc.*, 95 F.3d 45 (5th Cir. 1996) holding the same.

Thus, the Fifth Circuit has previously required plaintiffs to show, at a minimum, (i) power to control the alleged primary violator's general operations; and/or (ii) power to control the specific underlying wrongdoing. Fifth Circuit law therefore remains consistent with the two-prong *Dennis* test. General control would satisfy the first prong of the *Dennis* test (power or influence over the controlled person); and control over the specific underlying wrongdoing would satisfy the second prong of the *Dennis* test (inducement of the alleged violation). In a case filed in this District, the SEC has agreed that both showings (general control and specific control) are required. *See SEC v. Jackson*, Case No. 12-cv-00563, Dkt. 37 at 41 (filed June 22, 2012) (attached hereto as Appendix A).[4] Courts within the Fifth Circuit agree. *See, e.g.*, *Zagami v. Natural Health Trends Corp.*, 540 F. Supp. 2d 705, 716 (N.D. Tex. 2008).

Here, Plaintiffs do not appear to dispute that their claim does require "actual power or influence over the controlled person," *see* Opp'n Br. at 53-54, and also seem to acknowledge that the power to control the alleged wrongdoing is also required, *see* Opp'n Br. at 58 (stating that the *ArthroCare* court dismissed the plaintiff's complaint because it failed to allege that the defendant "had no means of 'control[ling]' the company's materially incorrect financial statements")[5]; *see*

---

[4] The *Jackson* court held that the SEC had stated a control-person claim against a company CFO where the CFO actively facilitated the underlying FCPA violations and was responsible for approving the underlying payments to government officials. *See SEC v. Jackson*, 908 F. Supp. 2d 834, 866-67 (5th Cir. 2012).

[5] Citing *In re ArthroCare Corp. Sec. Litig.*, 726 F. Supp. 2d 696, 730-31 (W.D. Tex. 2010).

4

*also id.* at 59 (noting that the *In re Global Crossing* court required a showing of "how the purported 'controllers' actually controlled the defendant-company's management")[6].[7]

Regardless of which thread of Fifth Circuit law this Court applies, Plaintiffs' complaint fails to satisfy even the most permissive interpretation of the Fifth Circuit's control-person requirements.  As to the first requirement, actual control or influence over KiOR, the Third Amended Complaint does not include any well-pleaded facts sufficient to establish power or influence over the controlled person (*e.g.*, KiOR).  *See* Khosla Opening Br. at 5, 7-9, 11.  Plaintiffs gloss over this argument and fail to confront the authorities demonstrating that their allegations of Khosla's power to control KiOR's day-to-day operations are insufficient—retreating instead to a rehash of the infirm allegations themselves without explaining how they can meet this test.  *See* Section B, below.  And as to the second requirement, inducement or involvement in the specific alleged misstatements themselves, the Third Amended Complaint contains no allegations whatsoever of Khosla's connection to or ability to control the specific misstatements at issue.  *See* Khosla Opening Br. at 5, 7-9, 11.  Plaintiffs respond only by assuming the conclusion and claiming that Khosla failed to exercise purported "power to prevent or correct" the alleged misstatements.  Opp'n Br. at 58.  But they do not—and cannot—point to any well-pleaded facts in their complaint that support that conclusion.[8]

Rather than demonstrating that their allegations meet any of the Fifth Circuit's tests (because they do not), Plaintiffs claim that Khosla misrepresented the law and then construct a

---

[6] Citing *In re Global Crossing, Ltd. Sec. Litig.*, No. 02-Civ. 910, 2005 U.S. Dist. LEXIS 1628 at *42-43 (S.D.N.Y. Aug. 8, 2005).

[7] Although Plaintiffs claim that there is "binding precedent" excusing them from pleading "an ability on the part of Khosla to control the activities at issue," Opp'n Br. at 57, Plaintiffs have cited no such case and Khosla is aware of no such authority.

[8] In support, Plaintiffs cite to paragraphs of their complaint that provide conclusions but no specific facts.  *See* Opp'n Br. at 58 (citing TAC ¶¶ 39, 239-42).

5

straw-man out of arguments Khosla never advanced. Plaintiffs assert that Khosla misstated the law by arguing that *actual participation* is required to meet the second prong of *Dennis*. But Khosla never claimed that the Third Amended Complaint must be dismissed because Plaintiffs failed to allege actual participation by Khosla in the underlying statements. Rather, as Khosla actually argued, Plaintiffs' complaint must be dismissed because Plaintiffs failed to make even the minimum required allegation that Khosla had the *ability to control* the underlying statements or KiOR's day-to-day affairs.[9]

### B. Plaintiffs do not (and cannot) explain how the facts alleged could establish control; instead, Plaintiffs just repeat those insufficient allegations.

Although Plaintiffs attempted to put a new spin on some of the allegations in the Third Amended Complaint, they fail to address any of the arguments Khosla presented in his opening brief that explain why these facts, even when taken as true, do not and cannot establish control.

*First*, Plaintiffs claim that "Khosla proceeded to direct KiOR's operational strategy personally in high-level meetings with the company's senior management." Opp'n Br. at 55. But, as Khosla pointed out in his opening brief, the only meetings that Plaintiffs allege Khosla participated in occurred two years before KiOR went public. *See* Br. at 8-10. Moreover, Khosla's purported actions do not support control. Plaintiffs allege that Khosla expressed his desires that the company purchase an additional pilot plant and hire more people. *See* TAC ¶ 37.[10] Even assuming that Khosla did induce the company to do these two things (and Plaintiffs do not allege that he did), that would not establish that Khosla had the ability to control the company's *day-to-day* operations or any specific public statements.

---

[9] *See, e.g.*, Br. at 5 ("Plaintiffs do not allege that Khosla induced or had the ability to control any of the specific statements at issue, let alone that he had the ability to exert day-to-day control over Cannon, Karnes, or KiOR.").

[10] "TAC" refers to the Third Amended Complaint (Dkt. No. 86).

6

*Second,* Plaintiffs re-assert that Khosla controlled KiOR because Samir Kaul, a partner in Khosla's venture-capital firm, was on KiOR's board.[11]  Opp'n Br. at 55.  Plaintiffs have offered no facts to support their assertion that Khosla controlled Kaul, other than the fact that the two men are business partners.  But even if the Court were to credit this conclusory allegation, *contra Bell Atl. Corp. v. Twombly*,[12] it would still not support a control-person claim.  Khosla's supposed influence over one of several board members would still not give him the power to control the company's specific public statements or day-to-day operations.  Plaintiffs do not claim that Kaul was involved in any of the alleged misstatements.  Nor do they claim that Kaul had the ability to control Board decisions, company management, or any other company activities.  Indeed, other courts have held that even the right to appoint *multiple* board members does not constitute control.  *See, e.g.*, *In re Kosmos Energy Ltd. Sec. Litig.*, 955 F. Supp. 2d 658, 676-77 (N.D. Tex. 2013), *In re Global Crossing Ltd. Sec. Litig.*, No. 02-cv-910, 2005 WL 1907005, at *13 (S.D.N.Y. Aug. 8, 2005).

*Third*, Plaintiffs allege that Khosla "spoke[ ] on behalf of the Company in front of a national television audience."  Opp'n Br. at 56.  Plaintiffs previously alleged that Khosla gave an interview to 60 Minutes, but they did not claim he did so on KiOR's behalf.  *See* TAC ¶ 3.  Nevertheless, the allegation is immaterial.  Plaintiffs do not connect Khosla's statements in the January 2014 interview with any of the alleged wrongdoing, most of which occurred years

---

[11] Plaintiffs accuse Khosla of "play[ing] coy about his relationship with Samir Kaul."  Opp'n Br. at 55 n.12.  To the contrary, Khosla simply quoted from and responded to the Third Amended Complaint's allegations.  Plaintiffs did not previously allege that Kaul is a "'founding general partner' at Khosla's venture-capital firm."  *See* TAC ¶ 36.  In any event, this new allegation does not change the analysis.

[12] 550 U.S.544, 555 (2007).

7

earlier. And, of course, Plaintiffs cannot successfully contend that Khosla had the ability to control KiOR's day-to-day operations just because he once gave a television interview.

*Fourth*, Plaintiffs repeat their claim that O'Connor thought "it would seem at times that Khosla controlled the company, not Defendant Cannon." TAC ¶ 38; Opp'n Br. at 55. They now add that O'Connor's opinion is apparently "based on [his] first-hand observations and experience as a member of the Company's Board and senior management team." Opp'n Br. at 55. Explaining the basis for O'Connor's opinion does not change it from an opinion into a fact. Nor does this explanation render the opinion any less conclusory; Plaintiffs have still failed to identify when O'Connor formed such an opinion and what *facts* caused him to form that opinion. *See* Br. at 10-11.

*Fifth*, Plaintiffs once again fall back on their assertion that Khosla must be a control person because he allegedly indirectly owns a majority of KiOR's stock. Opp'n Br. at 55-56; TAC ¶¶ 34-35. But Plaintiffs fail to justify the crucial leap—they fail to explain how Khosla's power to vote shares translated into power to run the company day-to-day or dictate the contents of the company's public statements. Without that specific link, Plaintiffs' control-person claim rests on nothing more than Khosla's "position or title"—which cannot establish control as a matter of law. *See In re Franklin Bank Corp. Sec. Litig.*, 782 F. Supp. 2d 364, 380 (S.D. Tex. 2011); *In re Enron Corp. Sec. Litig.*, 235 F. Supp. 2d 549, 595 (S.D. Tex. 2002). The Fifth Circuit has rejected the contention that control-person liability can hinge on "status alone." *Dennis*, 918 F.2d at 509-10.

In fact, all three of the purported controlling-shareholder cases that Plaintiffs cite only further undermine their control-person claim. *See* Opp'n Br. at 57. In each of these cases, the Plaintiffs pleaded or proved facts establishing control well beyond the ability to vote shares.

8

*Thompson.* The defendant in *Thompson* had a far greater degree of control than Plaintiffs allege with respect to Khosla. In addition to owning shares, the defendant Presley was both an officer and a director. 636 F.2d at 958. Moreover, Presley was "involved in the day-to-day coordination" of loans that related to the underlying fraud.[13] Here, Plaintiffs do not allege that Khosla was an officer or a director (neither of which he ever was), nor do they allege that he was involved in either KiOR's day-to-day operations[14] or the alleged misstatements.

*SEC v. Imperiali.* In *Imperiali*, the defendant (Imperato) was the president, chairman of the board, and/or chief executive officer of his company. 594 F. App'x 957, 959 (11th Cir. 2014) (unpublished). He personally distributed false private placement memoranda and made false SEC filings. *Id.* Although he was primarily liable, Imperato argued he could not also be held secondarily liable as a control person because he "briefly relinquished control of [the company] in November 2007." *Id.* at 962. The court rejected his argument against secondary liability because, in addition to being the controlling shareholder, Imperato "controlled corporate decisions" and admittedly controlled the company when many of the false statements were made. *Id*. In contrast, here Plaintiffs do not allege that Khosla committed any primary violation or held any management position within the company.

*Shepherd v. S3 Partners, LLC.* In this case, the court declined to dismiss Northwest Consulting Group. No. 09-1405-RSW, 2011 U.S. Dist. LEXIS 117957, at *18 (N.D. Cal. Oct.

---

[13] The defendant's company marketed mortgage loans. It fraudulently obtained the FHA approval required to market those loans. *Id.* at 949.

[14] Plaintiffs do claim in their brief that Khosla was involved in the company's "operational strategy." Opp'n Br. at 55, 56. This conclusion, even taken at face value, does not establish the requisite day-to-day control or control over the specific misstatements. Plaintiffs do not allege that this "operational strategy" had anything to do with the alleged misstatements. Moreover, the ability to influence a company's long-term direction is not the same as the ability to direct its day-to-day operations. Indeed, Plaintiffs themselves appear to distinguish between "long-term" and "day-to-day" operations. *See* Opp'n Br. at 58.

9

12, 2011). The alleged primary violators were S3, a partnership, and its three partners who personally perpetrated the alleged fraud. *Id.* at *3-4, 14-15. Northwest was a 1/3 owner of S3. But Plaintiffs had alleged that Northwest was nothing more than the alter ego of one of the S3 partners. *See* Case No. 09-cv-01405, D.I. 37 (*Shepherd* Third Amended Complaint, attached as Appendix B) ¶ 26. Here, Plaintiffs do not allege that any of the primary violators was a shell company or Khosla's alter ego.

<u>*Davidco Investors LLC v. Anchor Glass Container Corp.*</u>  Plaintiffs claim that this case shows that control-person claims against a majority shareholder should survive a motion to dismiss as a matter of course. *See* Opp'n Br. at 59-60. But Plaintiffs fail to acknowledge that the defendant in *Davidco* was far more than a majority shareholder. No. 04-cv-2561, 2006 U.S. Dist. LEXIS 11527, at *85-86 (M.D. Fla. March 6, 2006). In *Davidco*, the defendant group "controlled four seats on the board of directors" and recruited the remainder, appointed the company's management, and was "involved in [the company's] day-to-day business affairs." *Id.* at *90. Here, Plaintiffs do not allege that Khosla controlled or appointed the majority of directors; they do not allege that Khosla appointed any managers; and they do not allege he was involved in the company's day-to-day affairs. Thus, Plaintiffs have failed to muster any case to support their contention that Khosla's mere investor and shareholder status can create control-person liability.

      **C.    The new allegations Plaintiffs added in their opposition brief do not support a control-person claim, either.**

In an apparent attempt to shore up their complaint, Plaintiffs add two new allegations in their Opposition brief. Even if the Court could consider these new allegations in Plaintiffs'

brief,[15] neither of these extra-pleading contentions provides any additional support for their control-person claim.

*First,* Plaintiffs allege, in their Opposition brief, that Khosla's controlling-shareholder status allowed him to control the outcome of unspecified executive compensation matters. Opp'n Br. at 56.[16]  But even if Khosla could have determined executive compensation, that cannot establish that he could control the contents of SEC filings and public statements, let alone KiOR's day-to-day operations.

*Second*, Plaintiffs allege in their Opposition brief that Khosla provided loans to the company in January 2012, October 2013, and March 2014, and that Khosla intends to fund KiOR's exit from bankruptcy.  *Id.* at 58.  Plaintiffs fail to explain, however, how any of this financing supports a claim of control.  Indeed, Khosla's continued investment and belief in KiOR completely undermines Plaintiffs' suggestion that Khosla knew that the company was not viable. *See id*.

> **D.      Plaintiffs cannot rely on a liberal pleading standard to excuse their failure to plead specific facts that would establish control.**

Rather than explain how the meagre and inapposite facts they have pleaded could possibly establish the requisite control, Plaintiffs instead emphasize that they must meet only a relaxed pleading standard.  Opp'n Br. at 54.  But Plaintiffs' attempt to relax the pleading standard contravenes Rule 8,[17] *Twombly* and *Iqbal*.  Although Plaintiffs cite both *Twombly* and

---

[15] *See, e.g.*, *Langston v. San Jacinto Jr. Coll.*, 25 F. Supp. 3d 1009, 1016 (S.D. Tex.  2014) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (quoting *Roebuck v. Dothan Sec., Inc.*, 515 F. App'x 275, 280 (5th Cir. 2013)); *Coates v. Heartland Wireless Commc'ns, Inc.*, 55 F. Supp. 2d 628, 644 n.26 (refusing to permit plaintiffs to rely on allegations asserted in their brief, but not in their complaint).

[16] *Compare* Opp'n Br. at 56 *with* TAC ¶ 36 (alleging that Khosla Ventures II, LP would be able to control board-member selection).

[17] The PSLRA's heightened pleading standards apply to Plaintiffs' underlying securities-fraud

11

*Iqbal* in passing, they ignore their core holdings. Under those cases, a plaintiff must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Rather, the plaintiff must provide factual allegations (and not mere labels or conclusions) sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Plaintiffs also claim that they need not allege facts to support every element of a *prima facie* case, but they cite only a pre-*Twombly* district court case in support. *See* Opp'n Br. at 54.[18] As explained below, neither the factual allegations in Plaintiffs' Third Amended Complaint, nor the new allegations that Plaintiff added in its Opposition brief, would plausibly show that Khosla had the requisite control over KiOR, Cannon, or Karnes.

### E. Plaintiffs' addition of new but inadequate allegations in their opposition brief further demonstrates why leave to amend should be denied.

Plaintiffs did not request leave to amend, nor did they contend that they could plead additional facts to remedy the deficiencies in their fourth attempt at a complaint. Moreover, Plaintiffs' Opposition brief suggests that any additional attempt at a complaint would be similarly inadequate. Plaintiffs added several allegations in their Opposition that are not in the Third Amended Complaint in a transparent (but unsuccessful) attempt to shore up a deficient pleading. But even accepting these new allegations at face value, they do nothing to bolster the control-person claims—as discussed above. There is no reason to believe that plaintiffs would add better allegations if they were given what would amount to a sixth chance to add them.

---

claim. *See* Reply Memorandum of Law in Support of Defendant Fred Cannon's Motion to Dismiss the Third Amended Complaint.

[18] Citing this District's 2003 opinion in *In re Enron Corp. Sec. Derivative and ERISA Litig.*, No. H-01-3624, 2003 U.S. Dist. LEXIS 1668 (S.D. Tex. Jan. 28, 2003).

944587

For the foregoing reasons and the reasons provided in his opening brief, Khosla respectfully requests that the Court dismiss Claim 2 of the Third Amended Complaint with prejudice.

**KEKER & VAN NEST LLP**

Dated: May 22, 2015

By: */s/ Jan Nielsen Little*
JAN NIELSEN LITTLE
**Attorney-in-Charge**
Fed No. 30994 / CA Bar No. 100029
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

*Of Counsel:*
STEVEN P. RAGLAND
*Pro Hac Vice* / CA Bar No. 221076
JUSTINA K. SESSIONS
*Pro Hac Vice* / CA Bar No. 270914
JULIA SUN CHOE
*Pro Hac Vice /* CA Bar No. 287038
KEKER & VAN NEST LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

Attorneys for Defendant VINOD KHOSLA

CERTIFICATE OF SERVICE

I hereby certify that on this the 22nd day of May, 2015, a true and correct copy of the foregoing document was served by CM / ECF to the parties registered to the Court's CM / ECF system.

*/s/ Jan Nielsen Little*
JAN NIELSEN LITTLE

13

944587