United States District Court
Southern District of Texas
**ENTERED**
July 22, 2016
David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| DAVE CARLTON, *et al.*, § | |
| § | |
| Plaintiffs, § | |
| § | |
| VS. § | CIVIL ACTION NO. H-15-012 |
| § | |
| FRED CANNON, *et al.*, § | |
| § | |
| Defendants. § | |

**MEMORANDUM AND OPINION**

Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a), imposes civil liability on a person who "controls" another person who violated the federal securities laws. In its May 4, 2016 Memorandum and Opinion, the court dismissed the control-person claims against KiOR's CEO, Fred Cannon; its CFO, John Karnes; and its cofounder and majority shareholder, Vinod Khosla. The plaintiffs moved the court to reconsider its holding that they failed to allege a control-person claim against Karnes. (Docket Entry No. 124). The plaintiffs do not seek reconsideration of the court's holdings as to the claims against Cannon and Karnes under § 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), or the claims against Cannon and Khosla under § 20(a).

In this Memorandum and Opinion, the court amends its previous analysis to clarify the legal standard for control-person liability under § 20(a) and the application of that standard to the plaintiffs' allegations against Karnes. Although the analysis has changed, the outcome does not. The plaintiffs have not sufficiently alleged a control-person claim against Karnes, and the motion for reconsideration is denied for the reasons explained below.

**I.      The Legal Standard for a Motion for Reconsideration**

1

The Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration. *See St. Paul Mercury Ins. Co. v. Fair Grounds Corp.*, 123 F.3d 336, 339 (5th Cir. 1997) ("[T]he Federal Rules of Civil Procedure do not recognize a general motion for reconsideration."). A court retains the power to revise an interlocutory order before entering judgment adjudicating the parties' claims, rights, and liabilities. FED. R. CIV. P. 54(b). A Rule 59(e) motion "calls into question the correctness of a judgment," *Templet v. HydroChem Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004) (citing *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002)); a motion that asks the court to change an order or judgment is generally considered a motion to alter or amend under Rule 59(e), *T-M Vacuum Products, Inc. v. TAISC, Inc.*, No. 07-cv-4108, 2008 WL 2785636, at *2 (S.D. Tex. July 16, 2008).

A Rule 59(e) motion "'must clearly establish either a manifest error of law or fact or must present newly discovered evidence' and 'cannot be used to raise arguments which could, and should, have been made before the judgment issued.'" *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863–64 (5th Cir. 2003) (quoting *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)). Changing an order or judgment under Rule 59(e) is an "extraordinary remedy" that courts use sparingly. *Templet*, 367 F.3d at 479; *see also* 11 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 2810.1 at 124 (2d ed. 1995). The Rule 59(e) standard "favors denial of motions to alter or amend a judgment." *S. Constructors Grp., Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993). A motion to reconsider may not be used to relitigate matters, raise arguments, or submit evidence that could have been presented before the judgment or order was entered. 11 WRIGHT & MILLER § 2810.1 at 127–28 (footnotes omitted).

## II.    Analysis

2

The court's May 4, 2016 Memorandum and Opinion held that the plaintiffs' allegation that Cannon violated § 10(b) was sufficient to avoid dismissal.  The plaintiffs argue that because they adequately alleged Cannon's individual primary liability, they also adequately alleged KiOR's corporate liability under respondeat superior.  If KiOR is the "controlled" entity, the plaintiffs reason, Karnes is secondarily liable for KiOR's primary violation because he had the power as CFO to "control" the company.  The plaintiffs contend that the court was wrong in holding that "Karnes could not be liable under Section 20(a) of the Exchange Act because he had not committed a primary violation under Section 10(b) . . . ."  (Docket Entry No. 125 at p. 12).  The court's statement that "Karnes is not liable under § 10(b), so he cannot be liable under a control-person theory," is the basis for the motion to reconsider.  (Docket Entry No. 113 at p. 92).

The court agrees that this statement is not well-phrased.  The court agrees that Karnes himself need not have committed a primary violation as a prerequisite to control-person liability under § 20(a).  A more accurate and precise statement would be that Karnes is not liable for either a primary violation of § 10(b) of the Exchange Act or liable as a control person.  While the court wrongly stated the basis for control-person liability, that error does not change the outcome.

The defendants present three arguments in response to the plaintiffs' motion.  The first is that the plaintiffs waived their control-person claim against Karnes based on KiOR's primary violation.  The second is that even if the plaintiffs did not waive this claim, KiOR's corporate liability is secondary and control-person liability cannot be based on a secondary violation.  Finally, the defendants argue that the third amended complaint does not allege that Karnes had the power to, or did, control KiOR.

Each of these arguments is addressed below.

3

### A.      Waiver

A motion for reconsideration "cannot be used to raise arguments which could, and should, have been made before the judgment issued.  [Nor can it] be used to argue a case under a new legal theory."  *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990) (quotation marks omitted); *see also Williams v. Toyota Motor Eng'g & Mfg. N. Am., Inc.*, 470 F. App'x 309, 313 (5th Cir. 2012) (per curiam).  The first question is whether the plaintiffs timely asserted a control-person claim against Karnes based on KiOR's primary liability, or whether they changed the basis for imposing control-person liability on Karnes after the court ruled on the motion to dismiss, waiving the claim by failing to assert it earlier.

In their third amended complaint, the plaintiffs alleged that "[t]hroughout the class period, the individual defendants exercised their power and authority to cause KiOR to engage in the wrongful acts complained of herein.  The individual defendants therefore were 'controlling persons' of KiOR within the meaning of Section 20(a) of the Exchange Act."  (Docket Entry No. 86 at ¶ 241).  In their response to the motion to dismiss, however, the plaintiffs did *not* argue that KiOR had committed a primary violation or explain that Karnes faced § 20(a) liability based on his control over KiOR.  Rather, the plaintiffs argued that because their third amended complaint "supported a claim against Cannon and Karnes under Section 10(b) of the Exchange Act, Cannon's and Karnes's motions to dismiss the Section 20(a) claim must be denied."  (Docket Entry No. 97 at p. 62).  In their motion for reconsideration, by contrast, the plaintiffs argue that because "KiOR is a primary violator" and that because "Karnes controlled KiOR," Karnes is subject to control-person liability. (Docket Entry No. 125 at p. 9–10).

The record shows that the plaintiffs changed their theory of liability in the motion for

reconsideration.  Although the plaintiffs' third amended complaint alleged control-person liability

against Karnes based on KiOR's primary violation, the plaintiffs did not raise or brief that issue in

responding to the motion to dismiss.  A party waives claims it fails to raise or brief.  *United States*

*v. Reagan*, 596 F.3d 251, 254–55 (5th Cir. 2010).  The plaintiffs' brief in response to Karnes's

motion to dismiss did not argue or point to record or case-law support for the proposition that Karnes

was liable as a control person for KiOR's primary violation.  As a result, neither Karnes's reply brief

nor the court's Memorandum and Opinion addressed that argument.

A motion for reconsideration cannot be used to advance a new legal theory that could have

been raised before the court ruled.  The motion for reconsideration can be denied on that basis.  The

court will, however, also address the merits of the plaintiffs' arguments, which provide independent

grounds for denying reconsideration.

### B.      The Legal Standard for Control-Person Liability

Section 20(a) provides:

> Every person who, directly or indirectly, controls any person liable under any
> provision of this chapter or of any rule or regulation thereunder shall also be liable
> jointly and severally with and to the same extent as such controlled person to any
> person to whom such controlled person is liable (including to the Commission in any
> action brought under paragraph (1) or (3) of section 78u(d) of this title), unless the
> controlling person acted in good faith and did not directly or indirectly induce the act
> or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a).  A control-person claim requires sufficient factual allegations that a "controlled"

individual or entity violated the securities laws and that the defendant had the power to "control"

that individual or entity.  The legal standard for each requirement is addressed below.

### 1.      Who Can Be "Controlled"?

"Control person liability is secondary only and cannot exist in the absence of a primary

violation." *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 383 (5th Cir. 2003). Although the Fifth Circuit has not directly addressed the issue, other courts hold that the primary violator can be a corporation and need not be named in the same action against the defendant allegedly subject to control-person liability. *In re Supreme Specialities, Inc., Sec. Litig.*, 438 F.3d 256, 285 (3d Cir. 2006), *abrogated on other grounds by Tellabs, Inc. v. Makor Issues & Rights, L.T.D.*, 551 U.S. 308 (2007) ("[T]here is no requirement in the language of [§ 20(a)] that the controlled person be named as a defendant as a predicate to imposing liability upon the controlling individual defendants."); *Kemmerer v. Weaver*, 445 F.2d 76, 78 (7th Cir. 1971) (control-person liability adequately alleged based on a primary violation by a nondefendant, since-dissolved association); *In re Hayes Lemmerz Int'l, Inc.*, 271 F. Supp. 2d 1007, 1021 n.11 (E.D. Mich. 2003) ("[I]f the complaint states a primary violation by the Company, even if the Company is not named in the complaint as a defendant, then a § 20 claim can stand if the individuals were controlling persons.").

Courts have also held that the Bankruptcy Code's automatic-stay provision, 11 U.S.C. § 362(a)(1), does not prevent a plaintiff from asserting a control-person claim when the primary violator, as here, is a corporation in bankruptcy. *In re Thornburg Mortg., Inc., Sec. Litig.*, 824 F. Supp. 2d 1214, 1279 (D. N.M. 2011) (collecting cases).[1] The courts reason that the "liability of the primary violator is simply an element of proof of a section 20(a) claim, and . . . liability need not be actually visited upon the primary violator before a controlling person may be held liable for the primary violator's wrong." *In re CitiSource, Inc., Sec. Litig.*, 694 F. Supp. 1069, 1077 (S.D.N.Y.

---

[1] For example, at least three circuit courts have allowed § 20(a) claims to proceed against individual defendants based on primary violations by a corporation subject to the automatic stay. *See, e.g.*, *In re Suprema*, 438 F.3d at 285–86; *In re Stone & Webster, Inc., Sec. Litig.*, 424 F.3d 24, 27 (1st Cir. 2005); *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1059–60, 1065–66 (9th Cir. 2000).

1988).  As one district court in this circuit has explained, "nothing in familiar and conceptually related attribution principles such as conspiracy membership, agency, or aider and abettor, demands a visiting of actual liability upon an active wrongdoer as a condition to an attribution of that liability."  *Keys v. Wolfe*, 540 F. Supp. 1054, 1062 (N.D. Tex. 1982) (Higginbotham, J.), *rev'd in part on other grounds,* 709 F.2d 413 (5th Cir. 1983).

### 2.    Who Has "Control"?

"The legislative history of [§ 20(a)] demonstrates that Congress enacted [that] section[] to address the specific evil of persons seeking to evade liability under the [securities laws] by organizing 'dummies,' that, acting under their control, would commit the prohibited acts."  *Paul F. Newton & Co. v. Tex. Commerce Bank*, 630 F.2d 1111, 1118 (5th Cir. 1980).  In keeping with the "remedial purpose of the federal securities acts," *id.* at 1119, the SEC has interpreted the term "control" broadly to include "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise," 17 C.F.R. § 230.405.

In the Fifth Circuit, alleging and proving control-person liability does not require pleading facts that would show the control person's "participation in the wrongful transaction."  *G.A. Thompson & Co., Inc. v. Partridge*, 636 F.2d 945, 958 (5th Cir. 1981).[2]  At the same time, "status alone will not automatically cause [a defendant] to be deemed a . . . controlling person."  *Dennis v. Gen. Imaging, Inc.*, 918 F.2d 496, 509 (5th Cir. 1990).  The precise legal standard remains somewhat unclear.  Among other questions, the Fifth Circuit has asked whether the defendant:

---

[2]  *But see, e.g.*, *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996) (requiring culpable participation); *Rochez Bros., Inc. v. Rhoades*, 527 F.2d 880, 885 (3d Cir. 1975) (same).

7

- had "effective day-to-day control" of the corporation, *Cameron v. Outdoor Resorts of Am., Inc.*, 608 F.2d 187, 195 (5th Cir. 1979), *modified on other grounds on panel reh'g*, 611 F.2d 105 (5th Cir. 1980) (per curiam);

- had "the requisite power to directly or indirectly control or influence corporate policy," *Thompson*, 636 F.2d at 958;

- had "actual power or influence over the controlled person," *Dennis*, 918 F.2d at 509;[3] or

- "actual[ly] exercise[d] . . . that power," *Abbot v. Equity Group, Inc.*, 2 F.3d 613, 620 (5th Cir. 1993) (declining to establish a controlling legal standard); *see also Heck v. Triche*, 775 F.3d 265, 283 n.18 (5th Cir. 2014) (same).

The circuits have offered additional, varying approaches.  *Metge v. Baehler*, 762 F.2d 621 (8th Cir. 1985), set out the most widely cited test.  A plaintiff must show that the defendant: (1) "actually participated in (i.e., exercised control over) the operations of the corporation in general" and (2) "possessed the power to control the specific transaction or activity upon which the primary violation is predicated," even though "he need not prove that this later power was exercised."  *Id.* at 631 (quotation marks omitted).  The Fifth Circuit has repeatedly declined to address the extent to which its case law fits within *Metge*'s  framework or whether it has adopted either or both of *Metge*'s prongs.  *Heck v. Triche*, 775 F.3d 265, 283 n.18 (5th Cir. 2014); *Abbot v. Equity Group*,

---

[3]  *Dennis* also stated that a plaintiff must show that the defendant "induced or participated in the alleged violation."  918 F.2d at 509.  As a later Fifth Circuit panel recognized, this holding conflicts with the circuit's earlier decision in *Thompson*, which rejected an actual-participation requirement.  *Abbot v. Equity Grp., Inc.*, 2 F.3d 613, 620 n.18 (5th Cir. 1993).  Under the prior-panel-precedent rule, the court must follow *Thompson* to the extent *Dennis* is inconsistent.  *Smith v. GTE*, 236 F.3d 1292, 1300 n.8 (5th Cir. 2001) ("[T]he holding of the first panel to address an issue is the law of this Circuit, thereby binding all subsequent panels unless and until the first panel's holding is overruled by the Court sitting en banc or by the Supreme Court.").

*Inc.*, 2 F.3d 613, 620 (5th Cir. 1993).[4]

Whatever control-person liability demands beyond a defendant's corporate status but short of culpable participation in the primary violation, a plaintiff "must at least show that the defendant had an ability to control the specific transaction or activity upon which the primary violation is based." *Heck*, 775 F.3d at 283 (quoting *Meek v. Howard, Weil, Laboisse, Friedrichs, Inc.*, 95 F.3d 45, at *3 (5th Cir. 1996) (per curiam) (unpublished)). The Fifth Circuit case law demonstrates that the ability-to-control requirement plays an important role in § 20(a) liability.

The Fifth Circuit has found support for a control-person claim when the defendant's role gave him the power to control the fraudulent transaction or activity. In *Thompson*, for example, the plaintiff sued several officers, directors, and shareholders in a mortgage-loan-marketing company. 636 F.2d at 949. The Fifth Circuit considered whether the district court erred in failing to grant a director-defendant's motion for judgment as a matter of law dismissing the control-person claim. Because the evidence showed that the defendant "was not only a 24% stockholder and an officer and director, but was apparently involved in the day-to-day coordination of the loan gathering,"—the conduct forming the basis for the primary violation—the Fifth Circuit held that the plaintiff had "established that [the defendant] had the requisite power to directly or indirectly control or influence corporate policy." *Id.* at 958.

*Heck v. Triche*, 775 F.3d 265 (5th Cir. 2014), the Fifth Circuit's most recent discussion of

---

[4] A court in this district has held that neither Fifth Circuit precedent nor the large size of modern corporations supported applying *Metge*'s first prong because it is "unlikely . . . that any single individual would have control of every particular division or engagement" of a "large, complex" firm. *In re Enron Corp. Sec., Derivative & ERISA Litig.*, No. 01-cv-3624, 2003 WL 230688, at *17–18 (S.D. Tex. Jan. 28, 2003).

control-person liability, is similar.[5]   The primary violator in *Heck* was the CEO of an antique-investment firm who issued allegedly misleading prospectuses to raise money from private investors. The control-person defendant was a certified public accountant who helped draft the prospectuses. *Id.* at 268.   The Fifth Circuit found a sufficient basis to support control-person liability.   *Id.* at 282–84.   The court reasoned that the CEO "was dependent" on the defendant "to get him out of debt," that the defendant "contributed and approved the financial concepts detailed in the prospectus," and that the CEO "checked in with [the defendant] after every investment."   *Id.* at 284. The court concluded that "[t]he evidence permit[ted] a finding that [the defendant] effectively controlled [the CEO] in the creation of [the company], drafting the relevant portions of the [company's] pool document, soliciting loans from investors, and pledging of [the company's] inventory . . . ."   *Id.*

When the Fifth Circuit has found insufficient support for a control-person claim, the defendant's role put the fraudulent transaction or activity outside his ability to control.   In *Dennis*, for example, the record showed that one defendant "owned a minority position" in the corporation, another was a director who "had no knowledge" of the allegedly fraudulent operations, and a third was a "nominal shareholder" who had "tried numerous times to obtain information concerning the [allegedly fraudulent] financial conduct . . . but was always rebuffed."   *Dennis*, 918 F.2d at 509–10. The circuit court affirmed summary judgment for the defendants dismissing the control-person claims against them.   *Id.*

*Abbot v. Equity Group, Inc.*, 2 F.3d 613 (5th Cir. 1993), is similar.   The plaintiffs asserted

---

[5]   Although the claim in *Heck* arose under Louisiana state law, the Fifth Circuit construed the Louisiana and the federal control-person statutes in a parallel fashion.   *See* 775 F.3d at 283.

control-person claims against a surety corporation and a bonding-agent corporation based on their participation in allegedly fraudulent financial transactions.  The primary violator was a partnership formed to operate a Houston apartment community.  The court granted the two defendants summary judgment dismissing the control-person claims.  The evidence showed that neither they "nor their respective employees and representatives were stockholders, directors, officers, employees, or partners of [the primary-violator corporation]; they did not attend its board or committee meetings; they were not involved in decisions by [the primary violator] to purchase properties for syndications to investors; they were not involved in operations of properties purchased by [the primary violator] or its affiliates; and they were not otherwise involved in the general operations of [the primary violator], including business, financial and marketing plans." *Id.* at 620.  The court rejected the argument that the defendant companies could be liable as control persons because their participation was essential to financing the allegedly fraudulent transactions.  That evidence did not show an ability to control the primary violator and was not "probative of [the defendants'] influence beyond the [allegedly fraudulent] transaction" at issue. *Id.* at 620–21.

*Meek* is another similar case.  The court granted the two brokerage-firm defendants summary judgment on the control-person claims because the evidence did not show their ability to control the specific fraud the primary-violator broker allegedly perpetrated.  95 F.3d at *3.  Although the record showed that the brokerage firms "had influence over [the broker's] commodities trading," it did not show that the firms "had anything to do with [the broker's] handling of the [plaintiffs'] securities investments, or any power to control his handling of those investments." *Id.*

Based on this case law, the question is whether the plaintiffs have "at least [alleged facts] show[ing] that [Karnes] had an ability to control the specific transaction or activity upon which the

primary violation is based." *See id.* at 283.

C.   **Discussion**

1.   **The Interplay Between Control-Person and Respondeat Superior Liability**

Karnes argues that because KiOR's respondeat superior liability is itself a form of secondary liability, it cannot be the basis for a control-person claim, which requires a primary violation. Section 20(a) does not require the "controlled" person to have committed a "primary," as opposed to a "secondary," violation. The statute merely states that a "controlled" person may be "any person liable under any provision of this chapter." 15 U.S.C. § 78t(a). Nor does the case law support the distinction Karnes advocates. The Supreme Court has made clear that "[a]ny person *or entity* . . . may be liable *as a primary violator* under Section 10b-5, assuming all of the requirements for primary liability under Rule 10b-5 are met." *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 191 (1994) (emphasis added). The Fifth Circuit has rejected the argument that § 20(a) "exclude[s] the application of common law agency principles such as respondeat superior." *Newton*, 630 F.2d at 1114.

If, as Karnes argues, respondeat superior liability cannot give rise to a control-person claim, that would shield from § 20(a) liability any defendant alleged to have controlled a corporation liable under § 10(b). This conclusion follows from the fact that a corporation "can conduct its affairs only through its officers and employees." *Holmes v. Bateson*, 583 F.2d 542, 560 (1st Cir. 1978). "One of the cornerstones of corporate law is that a corporation is responsible for the acts and omissions of its agents, officers, and employees acting under the corporate manner." *Id.*; *see also* RESTATEMENT (THIRD) OF AGENCY § 2.04 (respondeat superior makes an employer "subject to liability for torts committed by employees while acting within the scope of their employment.").

And respondeat superior "long has been applied to impose . . . liability in federal securities and criminal cases even where the principal itself has committed no primary violation." *In re Parmalat Sec. Litig.*, 474 F. Supp. 2d 547, 550 (S.D.N.Y. 2007).

A primary violation of the Exchange Act occurs when "any *person*, directly or indirectly . . . use[s] or employ[s], in connection with the purchase or sale of any security . . . any manipulative or deceptive device." 15 U.S.C. § 78j(b) (emphasis added). A "person" is "a natural person, *company*, government, or political subdivision, agency, or instrumentality of a government." 15 U.S.C. § 78c(a)(9) (emphasis added). As a result, "[i]n order for a company to be liable as a 'person' under Section 10(b), agency liability must be recognized, because an entity can only act through its agents." *Alvarado v. Morgan Stanley Dean Witter, Inc.*, 448 F. Supp. 2d 333, 338 (D. P.R. 2006). When a primary violator's conduct is attributed to a corporation under respondeat superior, the Fifth Circuit has treated that corporation as a primary violator. *Southland*, 365 F.3d at 383. Other circuits' case law is consistent. *See Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1106 (10th Cir. 2003); *Suez Equity Inv'rs, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 101 (2d Cir. 2001).

Karnes relies on the Fifth Circuit's decision in *Newton* to argue that respondeat superior liability cannot support a control-person claim. The *Newton* court held that "common law agency principles, including the doctrine of respondeat superior, remain viable in actions brought under the Securities Exchange Act and provide a means of imposing secondary liability for violations of the [Exchange] Act independent of § 20(a)." 630 F.2d at 1118. These two liability theories are complementary, not contradictory. "Under respondeat superior liability it is the employing organization that is liable. Whereas, under control person liability, responsibility can be imposed

13

upon the supervisor of the primary participant, even though the supervisor is not the employing organization." JAMES D. COX & THOMAS LEE HAZEN, 2 TREATISE ON THE LAW OF CORPORATIONS § 12:9 (3d ed. 2015). Recognizing this distinction, the *Newton* court reasoned that Congress enacted § 20(a) to reach those corporate officers on "whom agency law or other common law principles would not [otherwise] impose liability." *Newton*, 630 F.2d at 1118; *see also In re Villa*, 261 F.3d 1148, 1153 (11th Cir. 2001) (citing *Newton* and concluding that "corporate officers and directors, persons who are presumptively beyond the reach of respondeat superior, may be caught in the net of § 20(a)" (footnote omitted)).

This court found that the plaintiffs' third amended complaint adequately alleged Cannon's primary violation. KiOR may be liable "with respect to those same . . . statements, as having respondeat superior liability for those violations by [Cannon]." *See Southland*, 365 F.3d at 383. But even if KiOR is a "controlled" entity under § 20(a), the plaintiffs must also sufficiently allege that it was Karnes who had the power to "control" KiOR in order to allege control-person liability against him.

## 2. Whether the Plaintiffs' Allegations Show That Karnes Controlled KiOR

The court's May 4, 2016 Memorandum and Opinion identified Cannon's statements about how the Columbus plant operated from November 2012 to January 2014 as giving rise to liability under § 10(b). Cannon made these statements on earnings calls and in press releases. The plaintiffs' theory was that Cannon misrepresented the severity of the problems at the Columbus plant by downplaying them as normal "start-up" issues that did not implicate KiOR's core technology or impede the plant's ability to operate at commercial scale. (Docket Entry No. 97 at p. 8). The theory was that Cannon misled investors into believing that KiOR "was a viable business" when it was not.

(*Id.*).  Although respondeat superior imputes Cannon's wrongful conduct to KiOR, the plaintiffs must still plead facts sufficient to allege that Karnes had "an ability to control the specific transaction or activity upon which the primary violation is based."  *Heck*, 775 F.3d at 283.

The plaintiffs have not alleged facts showing or supporting an inference that Karnes, the company's CFO, had the ability to control what KiOR, acting through its agents, said in press releases or on earnings calls about plant operations or company technology.  Nor do the pleadings allege facts that show or support the inference that Karnes had the ability to control Cannon's allegedly misleading statements that gave rise to his and KiOR's liability under § 10(b).  The plaintiffs have not alleged that Karnes was involved in overseeing the Columbus plant operations or responsible for developing or monitoring the technology or its implementation, much less that he had the power to control Cannon's or KiOR's public statements about those topics or areas.[6]

The plaintiffs stress Karnes's role as a high-ranking corporate officer and his participation in the day-to-day operations of the company.  (Docket Entry No. 125 at p. 11).  The plaintiffs appear to suggest that because KiOR is the "controlled" entity, and because it may be liable under respondeat superior, alleging Karnes's general participation in corporate governance is enough.  The case law makes clear that "status alone will not automatically cause [a defendant] to be deemed a . . . controlling person," *Dennis*, 918 F.2d at 509.  General allegations about day-to-day participation in corporate affairs are insufficient to allege the ability to control the "*specific*" transaction identified as the basis for primary liability.  *See Heck*, 775 F.3d at 283 (emphasis added); *see also Metge*, 762

---

[6]  The court's dismissal of the § 20(a) claims against Khosla, the majority shareholder, is consistent with this analysis.  As the court explained in its Memorandum and Opinion, even if Khosla was heavily involved in KiOR's affairs, without factual allegations showing or supporting an inference that he had the ability to control the press-release and earnings-call statements giving rise to § 10(b) liability, the control-person claims against him fail.

15

F.2d at 631 (requiring both actual participation in corporate affairs and "the power to control the specific transaction or activity upon which the primary violation is predicated" (quotation marks omitted)).

The plaintiffs also argue that Karnes is liable as a control person because he had a "duty" to "correct promptly any public statements issued by KiOR which had become materially false or misleading." (Docket Entry No. 125 at p. 11). Section 20(a) liability is based on the power to control, not on a duty to correct. Even if Karnes had this duty, and breached it, that does not show that he had the ability to control Cannon's statements, imputed to KiOR, that violated § 10(b).

The plaintiffs cite two district court cases, but each is different and distinguishable. In *Zagami v. Natural Health Trends Corp.*, 540 F. Supp. 2d 705 (N.D. Tex. 2008), the court held that the plaintiffs had sufficiently alleged a control-person claim against a company's internal director. This director allegedly reviewed the company's financial statements and internal accounting controls during the relevant period. The company was the primary violator liable under § 10(b) for failing to disclose related-party transactions. The plaintiffs alleged that the defendant was the "independent director and chair" of the audit committee "charged with reviewing and approving all related-party transactions" when the failure to disclose occurred. *Id.* at 716. The allegations pleaded facts showing the defendant's "ability to control the specific transaction or activity upon which the primary violation [was] based." *Heck*, 775 F.3d at 283.

*In re TETRA Technologies, Inc., Securities Litigation*, No. 08-cv-965, 2009 WL 6325540 (S.D. Tex. July 9, 2009), *aff'd on reh'g*, 2009 WL 6326865 (S.D. Tex. Aug. 10, 2009), is similar to *Zagami*. The plaintiffs asserted a control-person claim against a corporate officer. The primary violator, the company, was liable under § 10(b) for "misstatements that insurance costs would be

reimbursed when they knew that the insurance claims had already been denied." *Id.* at *2. The court held that the plaintiffs had stated a control-person claim because they had sufficiently alleged the defendant's "involvement and supervision of the insurance claims" and "control over the insurance receivables situation." *Id.* at *1.

In *Zagami* and *TETRA*, the complaints plausibly alleged a control-person claim based on facts showing or supporting an inference that the control-person defendant had the power to control the conduct forming the basis of the § 10(b) violation. The allegations here, by contrast, show a CFO who had neither the power to control the type of statements alleged to be misleading nor the specific statements that gave rise to Cannon's and KiOR's § 10(b) liability. The plaintiffs have not alleged a basis to impose control-person liability on Karnes.

## III.  Conclusion

The motion for reconsideration is denied.  (Docket Entry No. 124).

SIGNED on July 22, 2016, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

17