UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DAVE CARLTON, *et al.*, | No.: 4:15-cv-00012 |
| Plaintiffs, | CLASS ACTION |
| v. | |
| FRED CANNON, *et al*., | Chief Judge Lee H. Rosenthal |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT, PLAN OF ALLOCATION,
AND TO CERTIFY A CLASS FOR SETTLEMENT PURPOSES**

## TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................ 1

II. SUMMARY OF THE CASE ............................................................................... 2

III. PROCEDURAL HISTORY ................................................................................. 4

    A. The Class Action ....................................................................................... 4

    B. KiOR Bankruptcy Proceedings .................................................................. 5

    C. Settlement Negotiations ............................................................................. 6

IV. CLASS CERTIFICATION .................................................................................. 6

V. THE PROPOSED SETTLEMENT SHOULD BE APPROVED AS FAIR,
REASONABLE, AND ADEQUATE ................................................................... 8

    A. There Is a Presumption in Favor of Settlements, Especially of Securities Class
Actions; Settlements Proposed by Competent and Experienced Counsel Are
Presumed to Be Fair .................................................................................. 9

    B. The Proposed Settlement Readily Satisfies the Fifth Circuit's Standards for
Settlement ................................................................................................ 10

        1. The Settlement Is Not the Product of Fraud or Collusion ....................... 11

        2. The Complexity, Expense and Likely Duration of this Litigation............ 11

        3. The Stage of the Proceeding at Which Settlement Was Achieved and
the Amount of Discovery Completed ...................................................... 13

        4. The Probability of Success on the Merits ................................................ 15

        5. The Range of Possible Recovery and the Difficulty of Proving
Damages.................................................................................................. 16

        6. The Opinions of Plaintiffs' Counsel and the Settlement Class Members
Favor Approval of the Settlement Approval............................................ 18

VI. THE PLAN OF ALLOCATION IS FAIR AND REASONABLE................................ 19

VII. CONCLUSION.................................................................................................. 20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods, Inc. v. Windsor*,
   521 U.S. 591 (1997) ........................................................................................................ 7

*Ayers v. Thompson*,
   358 F.3d 356 (5th Cir. 2004) .................................................................................. 10, 13

*Beecher v. Able*,
   575 F.2d 1010 (2d Cir. 1978) ....................................................................................... 19

*Carlton, et al., v. Cannon, et al.*,
   No. 4:15-cv-00012 (S.D. Tex.) ....................................................................................... 5

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) .......................................................................................... 17

*City Partnership Co. v. Jones Intercable, Inc.*,
   213 F.R.D. 576 (D. Colo. 2002) ..................................................................................... 7

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ...................................................................................... 19

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) .................................................................................. 9, 10

*DeHoyos v. Allstate Corp.*,
   240 F.R.D. 269 (W.D. Tex. 2007) ............................................................................... 18

*Florida Trailer & Equipment Co. v. Deal*,
   284 F.2d 567 (5th Cir. 1960) ....................................................................................... 10

*Garza v. Sporting Goods Properties, Inc.*,
   1996 WL 56247 (W.D. Tex. Feb. 6, 1996) .................................................................. 15

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000) ........................................................................................... 17

*Hicks v. Morgan Stanley*,
   No. 01 CIV. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ............................ 20

*Ibarra v. Texas Employment Comm'n*,
   823 F.2d 873 (5th Cir. 1987) ....................................................................................... 10

*In re "Agent Orange" Prod. Liab. Litig.*,
    611 F. Supp. 1396 (E.D.N.Y. 1985) ...................................................... 13

*In re Cendant Corp. Litig.*,
    264 F.3d 201, 241 (3d Cir. 2001) ...................................................... 17

*In re Cendant Corp. Sec. Litig.*,
    109 F. Supp. 2d 235 (D.N.J. 2000) ...................................................... 18

*In re Chicken Antitrust Litig. Am. Poultry*,
    669 F.2d 228 (5th Cir. 1982) ...................................................... 19

*In re Corrugated Container Antitrust Litig.*,
    643 F.2d 195 (5th Cir. 1981) ...................................................... 13

*In re Dell Inc.*,
    No. A-06- CA-726-SS, 2010 WL 2371834 (W.D. Tex. June 11, 2010) ............................... 14

*In re Educ. Testing Serv. Praxis Principles of Learning & Teaching: Grades 7-12 Litig.*
    ("ETS"),
    447 F. Supp. 2d 612 (E.D. La. 2006) ...................................................... *passim*

*In re Enron Corp. Sec. and ERISA Litigations*,
    No. H-01-3624, 2003 WL 22494413 (S.D. Tex. July 24, 2003) ............................... 7

*In re Global Crossing Sec. & ERISA Litig.*
    225 F.R.D. 436 (S.D.N.Y. 2004) ...................................................... 20

*In re Gulf Oil/ Cities Serv. Tender Offer Litig.*,
    142 F.R.D. 588 (S.D.N.Y. 1992) ...................................................... 20

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
    851 F. Supp. 2d 1040 (S.D. Tex. 2012) ...................................................... 14

*In re Heritage Bond Litig.*,
    No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ...................................................... 15

*In re IKON Office Solutions, Inc., Sec. Litig.*,
    194 F.R.D. 166 (E.D. Pa. 2000) ...................................................... 19

*In re Indep. Energy Holdings PLC Sec. Litig.*,
    210 F.R.D. 476 (S.D.N.Y. 2002) ...................................................... 7

*In re Initial Public Offering Sec. Litig.*,
    227 F.R.D. 65 (S.D.N.Y. 2004) ...................................................... 7

*In re Intelcom Gropu, Inc. Sec. Litig.*,
    169 F.R.D. 142 (D. Colo. 1996) ...................................................... 7

*In re Lease Oil Antitrust Litig. (No. II)*,
    186 F.R.D. 403 (S.D. Tex. 1999) ................................................................. 11, 13

*In re MicroStrategy, Inc. Sec. Litig.*,
    150 F. Supp. 2d 896 (E.D. Va. 2001) ............................................................. 19

*In re Prohibition Against Disclosing ENE Commc'ns to Settlement Judges*,
    494 F. Supp. 2d 1097 (N.D. Cal. 2007) ......................................................... 15

*In re Prudential Sec., Inc. L.P. Litig.*,
    1995 WL 798907 (S.D.N.Y. Nov. 20, 1995) ................................................. 16

*In re Remeron Direct Purchaser Antitrust Litig.*,
    No. CIV.03-0085 FSH, 2005 WL 3008808 (D.N.J. Nov. 9, 2005) ................. 14

*In re Rite Aid Corp. Sec. Litig.*,
    146 F. Supp. 2d 706 (E.D. Pa. 2001) ............................................................. 17

*In re Shell Oil Refinery*,
    155 F.R.D. 552 (E.D. La. 1993) ..................................................................... 11

*In re Train Derailment Near Amite, La*,
    No. Civ. A. MDL No. 1352, 2006 WL 1561470 (E.D. La. May 24, 2006) ......... 19

*In re Warfarin Sodium Antirust Litig.*,
    391 F.3d 516 (3d Cir. 2004) ........................................................................... 17

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985) ................................................................. 14

*Jenkins v. Trustmark Nat. Bank*,
    300 F.R.D. 291 (S.D. Miss. 2014) ................................................................. 13

*Klein v. O'Neal, Inc.*,
    705 F. Supp. 2d 632 (N.D. Tex. 2010) ........................................................... 16

*Lelsz v. Kavanagh*,
    783 F. Supp. 286 (N.D. Tex. 1991) ............................................................... 18

*Maher v. Zapata Corp.*,
    714 F.2d 436 (5th Cir. 1983) ........................................................................... 9

*McNary v. Am. Sav. & Loan Ass'n.*,
    76 F.R.D. 644 (N.D. Tex. 1977) ................................................................... 10

*Miller v. Republic Nat'l Life Ins. Co.*,
    559 F.2d 426 (5th Cir. 1977) ........................................................................... 9

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ............................................................. 17

*Oppenlander v. Standard Oil Co.*,
    64 F.R.D. 597 (D. Colo. 1974) ........................................................... 12

*Parker v. Anderson*,
    667 F.2d 1204 (5th Cir. 1982) ...................................................... 10, 11

*Pearson v. Ecological Science Corp.*,
    522 F.2d 171 (5th Cir. 1975) .............................................................. 9

*Pettway v. Am. Cast Iron Pipe Co.*,
    576 F.2d 1157 (5th Cir. 1978) ............................................................ 9

*Reed v. General Motors Corp.*,
    703 F.2d 170 (5th Cir. 1983) ................................................... 9, 11, 15

*Ressler v. Jacobson*,
    822 F. Supp. 1551 (M.D. Fla. 1992) ................................................. 13

*Rubenstein v. Republic Nat'l. Life Ins. Co.*,
    74 F.R.D. 337 (N.D. Tex. 1976) ....................................................... 10

*Ruiz v. McKaskle*,
    724 F.2d 1149 (5th Cir. 1984) .......................................................... 10

*Salinas v. Roadway Express, Inc.*,
    802 F.2d 787 (5th Cir. 1986) ............................................................ 11

*San Antonio Hispanic Police Officers' Org., Inc. v. City of San Antonio*,
    188 F.R.D. 433 (W.D. Tex. 1999) .................................................... 18

*Smith v. Tower Loan of Mississippi, Inc.*,
    216 F.R.D. 338 (S.D. Miss. 2003) .................................................... 17

*Stott v. Capital Fin. Servs., Inc.*,
    277 F.R.D. 316 (N.D. Tex. 2011) ..................................................... 15

*Strougo v. Bassini*,
    258 F. Supp. 2d 254 (S.D.N.Y. 2003) .............................................. 12

*Turner v. Murphy Oil USA, Inc.*,
    472 F. Supp. 2d 830 (E.D. La. 2007) ..................................... 11, 16, 19

*White v. NFL*,
    822 F. Supp. 1389 (D. Minn. 1993) ................................................. 20

*Williams v. First Nat. Bank*,
   216 U.S. 582 (1910) .......................................................................................... 9

*Young v. Katz*,
   447 F.2d 431 (5th Cir. 1971) ........................................................................... 10

**Statutes**

15 U.S.C. § 78u-4 ..................................................................................................... 12

**Rules**

Fed. R. Civ. P. 23 ....................................................................................................... 7

Fed. R. Civ. P. 23(a) ................................................................................................... 7

Fed. R. Civ. P. 23(b) ................................................................................................... 7

## I.      INTRODUCTION

Lead Plaintiffs Dave Carlton and Sharon Kegerreis ("Lead Plaintiffs"), through Plaintiffs' Counsel[1], propose for this Court's final approval of: (1) a settlement and dismissal of this action Defendants[2] in exchange for the payment of $4,500,000 in cash (the "Settlement Amount"); (2) Plan of Allocation for the disbursement of the proceeds among Settlement Class members;[3] and (3) certifying this Class for settlement purposes and appointing Lead Plaintiffs as the Class Representatives.

As set forth herein, the settlement is not only a fair, reasonable and adequate result for the Settlement Class as legally required, but Lead Plaintiffs and Lead Counsel believe that it is an excellent result in light of: (1) the bankruptcy of KiOR, Inc.; (2) the difficulties Lead Plaintiffs face in establishing Defendants' public statements were materially misleading and made with scienter; and (3) the hurdles Lead Plaintiffs would have to clear in order to establish loss causation. Based upon Plaintiffs' Counsel's investigation of the Settlement Class's claims, past experience in similar cases, and extensive disputes between the parties concerning damages, and liability, continuing the litigation would have only substantially delay payment of any recovery.

The reaction of the Class, to date, supports Plaintiffs' Counsel's realistic assessment. Pursuant to the Court's order at the settlement approval hearing on February 16, 2017, the Notice of the Settlement and its terms was mailed to 22,786 potential Class Members, and a Summary

---

[1] "Plaintiffs' Counsel" includes Lead Counsel The Rosen Law Firm, P.A. and Levi & Korsinsky LLP, as well as Liaison Counsel Gascoyne & Bullion, P.C. and additional liaison counsel Gresham P.C.

[2] All capitalized terms not defined herein shall have the same meaning as set forth in the Stipulation and Agreement of Settlement, dated February 14, 2017, filed with the Court on February 14, 2017. Dkt. No. 141 (the "Stipulation").

[3] A memorandum of points and authorities in support of Plaintiffs' Counsel's request for an award of attorneys' fees is filed concurrently herewith.

Notice was published once over *GlobeNewswire* and once on *Investors' Business Daily*. Bravata Decl. at ¶¶ 6, 10 attached as Exhibit 2 to the Kim Decl. [4] The deadline for filing objections is May 9, 2017; thus far, no objections have been received by Plaintiffs' Counsel or the Claims Administrator and there has only been one request for exclusion.[5] *Id.* at ¶ 12, 13.

## II.   SUMMARY OF THE CASE

This Action is a class action on behalf of all persons who purchased the securities of Mard, Inc. f/k/a KiOR, Inc. ("KiOR" or the "Company") from June 24, 2011 through March 17, 2014, inclusive, and were allegedly damaged thereby.[6] Lead Plaintiffs allege that Defendants made material misrepresentations to investors concerning the timing of projected production levels of biofuel at Defendants' Columbus Facility. Specifically, Lead Plaintiffs allege that: (i) despite constant setbacks, mechanical and design problems, and missed milestones, Defendants continued falsely to reassure investors that the Company remained on track to achieve

---

[4] Citations to Kim Decl. ¶ __ are to the Declaration of Phillip Kim in Support of Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation, and Lead Plaintiffs' Motion for an Award of Attorneys' Fees and Reimbursement of Expenses and Award to Lead Plaintiffs. Citations to Bravata Decl. ¶ __ are to the Declaration of Josephine Bravata Concerning the Mailing of the Notice of Pendency and Proposed Settlement of Class Action and Proof of Claim and Release Form, attached as Exhibit 2 to the Kim Decl.

[5] The request for exclusion was filed by Steven J. McGovern. Mr. McGovern purchased 400 shares of KiOR during the Settlement Class Period which represents a miniscule number of the approximately 42.6 million shares damaged during the Settlement Class Period.

[6] Excluded from the Settlement Class are Defendants, John Karnes, Vinod Khosla, all former officers and directors of Mard, Inc. f/k/a KiOR, Inc. and all such excluded Persons' immediate families, legal representatives, heirs, successors, and assigns, and any entity in which any excluded Person has or had a controlling interest, and any Persons who have separately filed actions against one or more of Defendants, based in whole or in part on any claim arising out of or relating to any of the alleged acts, omissions, misrepresentations, facts, events, matters, transactions, or occurrences referred to in the Litigation or otherwise alleged, asserted, or contended in the Litigation. Also excluded from the Settlement Class are those Persons who file valid and timely requests for exclusion. Additionally excluded from the Settlement Class are those Persons who have no compensable damages (*i.e.*, those who sold prior to a corrective disclosure).

commercially meaningful biofuel production levels at the Columbus Facility during the timeframes promised; (ii) the delays and lack of production at the Columbus Facility were attributable to design deficiencies; (iii) the Columbus Facility required numerous operational, design and equipment changes costing tens of millions of dollars just to move toward commercially meaningful production of biofuels; and (iv) additional mechanical improvements were required after over a year of repairs in order to obtain yields of biofuel that would create a sustainable business.

The truth regarding KiOR's production shortcomings was revealed through a series of partial disclosures. On July 1, 2013, KiOR issued a press release revealing that the Company had made its "first fuel shipment since March, 2013" on June 28, 2013, but failing to address the fact that it had failed to meet its 2Q13 production estimate or take any steps to revise its ambitious year-end production estimate. Kim Decl. at ¶ 20. On this news KiOR's stock price fell by $0.91, or about 16% in the next two trading days. *Id*. On August 8, 2013, KiOR issued another press release reiterating the underwhelming volume of total fuel shipped from the Columbus Facility. *Id*. at ¶ 21. During an earnings conference call the same day, Defendants significantly revised the company's year-end estimate downward. Over the next week, KiOR's stock price fell by $2.14, or about 45%. *Id*. KiOR issued another press release on December 23, 2013, again significantly revising downwards its production estimates, and revealing that the Columbus Facility would be ceasing commercial production through the end of 1Q14 for "mechanical improvements." *Id*. at ¶ 22. KiOR's stock price fell $0.07 on this news, or about 4.37%. *Id*.

On January 9, 2014, KiOR held a conference call to discuss shutting down the Columbus Facility, revealing significant costs anticipated for mechanical improvements and additional research and development. *Id*. at ¶ 23. KiOR's stock then fell $0.10 on this news, or about 5.7%.

3

*Id*. The following day, KiOR was downgraded by Raymond James & Associates, and KiOR's stock declined $0.16, or about 9.6% over the next trading days. *Id*. On January 14, 2014, KiOR was also downgraded by Cowen and Company, causing KiOR's stock to fall $0.13, or about 8.7%. *Id*. at ¶ 24. Finally, after the market had closed on March 17, 2014, KiOR filed its 2013 10-K, which confirmed that the company's operations had been severely impeded by significant structural design problems and would be shutting down the entire Columbus Facility. *Id*. at ¶ 25. The following day, KiOR's stock fell $0.42, or about 39.3%. On November 9, 2014, KiOR voluntarily filed for bankruptcy under Chapter 11. *Id*. at ¶ 26.

Defendants vigorously dispute Lead Plaintiffs' allegations. In light of Defendants' contentions, settlement of the action now provides class members with a certain recovery.

## III. PROCEDURAL HISTORY

### A. The Class Action

This action was commenced on August 20, 2013 styled as *Berry et al. v. KiOR, Inc., et al.,* 4:13-cv-2443. Dkt. No. 1. On November 25, 2013, the Court appointed Dave Carlton and Sharon Kegerreis as Lead Plaintiffs and approved Lead Plaintiffs' selection of The Rosen Law Firm, P.A. and Levi & Korsinsky LLP as Lead Counsel and Gascoyne & Bullion, P.C. as liaison counsel. Dkt. No. 36.

On January 27, 2014, Lead Plaintiffs filed the First Amended Class Action Complaint ("FAC") against KiOR, Fred Cannon, and John H. Karnes. Dkt. No. 38. On March 25, 2014, the then-named defendants to the Action filed motions to dismiss the FAC. Dkt. No. 41. Before the FAC was fully briefed, the Court granted Lead Plaintiffs' unopposed motion for leave to file the Second Amended Class Action Complaint ("SAC") Dkt. No. 49. The SAC was filed on May 27, 2014, which the then-named defendants moved to dismiss on July 3, 2014. Dkt. Nos. 50, 55.

4

Before the Court could enter a ruling on the pending motion to dismiss the SAC, on November 9, 2014, KiOR filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code which invoked the automatic stay against KiOR.  On January 5, 2015, the Court entered an order: (i) staying the case as to KiOR; (ii) severing the claims against Defendants Cannon and Karnes; and (iii) declaring the pending motion to dismiss as moot without prejudice to reassertion if appropriate after the case is reinstated to the active docket. Dkt. No. 84.  The severed claims against Cannon and Karnes proceed styled as *Carlton, et al., v. Cannon, et al.,* Case No. 4:15-cv-00012 (S.D. Tex.).

On February 13, 2015, Lead Plaintiffs filed the operative Third Amended Class Action Complaint ("TAC") against Defendants Cannon and Karnes, and adding Defendant Vinod Khosla. Dkt. No. 86.  Defendants Cannon, Karnes, and Khosla moved to dismiss the TAC, and on May 4, 2016, the Court granted Defendants Karnes and Khosla's motions to dismiss but denied Defendant Cannon's motion to dismiss.  Dkt. Nos. 92-94, 113. On June 8, 2016, Defendant Cannon filed his Answer, Defenses and Affirmative Defenses to the TAC.  Dkt. No. 123.

### B.    KiOR Bankruptcy Proceedings

After KiOR filed its bankruptcy petition in the United States Bankruptcy Court for the District of Delaware on November 9, 2014, styled as *In re KiOR, Inc.,* 14-12514, Lead Plaintiffs filed a Proof of Claim Form on February 9, 2015 to protect the Class's interest. Lead Plaintiffs retained bankruptcy counsel and consultants as well as filed an objection to KiOR's reorganization plan which proposed to subordinate the Class's claims. Plaintiffs' Counsel attended bankruptcy proceedings and provided testimony and argument on behalf of the Lead Plaintiffs. KiOR filed its Second Amended Chapter 11 Plan of Reorganization (the "Plan") on

June 1, 2015. Judge Christopher S. Sontchi entered the Conformation Order confirming the Plan on June 9, 2015 with the effective date of the Plan June 30, 2015.  Upon the effective date, KiOR re-emerged as Mard, Inc., a private company.

On June 27, 2016, Kurt F. Gwynne, the liquidating trustee appointed by the Plan, filed an adversary proceeding and complaint for declaratory relief that Lead Plaintiffs' Proof of Claim is subordinated (the "Adversary Proceeding"). Lead Plaintiffs defended the Adversary Proceeding and upon the Settlement, notified Mr. Gwynne and Judge Sontchi that the settlement of this securities class action would render the Adversary Proceeding moot.

### C.      Settlement Negotiations

On October 19, 2015, after submitting mediation briefs, the parties appeared before Robert Meyer Esq. of JAMS for a full-day mediation session. The mediation was held at a time in the litigation in which the Parties were well informed due to the extensive discovery conducted at that point. Kim Decl. at ¶ 45. Soon after the mediation the Parties reached a resolution in principle. *Id.* Thereafter, the Parties negotiated the terms of the settlement and drafted the relevant settlement papers.

On February 14, 2017, the parties submitted the Stipulation with the attached exhibits in a motion for preliminary approval of the Settlement. Dkt. No. 141. At the preliminary approval hearing held on February 16, 2017, the Court granted preliminary approval the Settlement and preliminarily certified the Settlement class, *see* Dkt No. 145; Transcript of the February 16, 2017 hearing ("Transcript") attached as Exhibit 1 to the Kim Decl., and set a schedule for the final approval process. Dkt. No. 146.

## IV.    CLASS CERTIFICATION

One of this Court's functions in reviewing a proposed settlement of a class action is to determine whether the action may be maintained as a class action under Rule 23 of the Federal

Rules of Civil Procedure. *See Amchem Prods, Inc. v. Windsor*, 521 U.S. 591 (1997). *See, e.g., In re Enron Corp. Sec. and ERISA Litigs.*, No. H-01-3624, 2003 WL 22494413, at *2 (S.D. Tex. July 24, 2003) (preliminarily approving settlement and conditionally certifying class for settlement purposes). Rule 23(a) sets forth four prerequisites to class certification: (i) numerosity, (ii) commonality, (iii) typicality, and (iv) adequacy of representation. Fed. R. Civ. P. 23. The class must also meet one of the three requirements of Rule 23(b). *Id.* The proposed Class is defined in the Stipulation as follows:

> "Settlement Class" means all persons who purchased or acquired the securities of Mard, Inc. f/k/a KiOR, Inc. during the Settlement Class Period, except that excluded from the Settlement Class are all: (i) Defendants, John Karnes, Vinod Khosla, and all current and former officers and directors of Mard, Inc. f/k/a KiOR, Inc. and its subsidiaries; (ii) blood relatives and household members of any such person excluded under (i); (iii) any entities affiliated with, controlled by, or more than 5% owned by, any person excluded under (i) and (ii); (iv) the legal representatives, heirs, successors or assigns of any person excluded under (i) through (iii); (v) Opt-Outs; and (v) Persons who have no compensable damages.

"[I]n securities cases, 'when a court is in doubt as to whether or not to certify a class action, the court should err in favor of allowing the class to go forward.'" *In re Initial Public Offering Sec. Litig.*, 227 F.R.D. 65, 90 (S.D.N.Y. 2004) (quoting *In re Indep. Energy Holdings PLC Sec. Litig.*, 210 F.R.D. 476, 479 (S.D.N.Y. 2002).[7] *See also City Partnership Co. v. Jones Intercable, Inc.*, 213 F.R.D. 576, 581 (D. Colo. 2002) (noting that securities claims are "particularly well suited for class action status because they allow for the policies behind the securities laws to be enforced in circumstances where there are numerous investors with small individual claims that otherwise would effectively be barred from litigation") (quoting *In re Intelcom Gropu, Inc. Sec. Litig.*, 169 F.R.D. 142, 144 (D. Colo. 1996)). On February 16, 2017, this Court certified the class preliminarily for settlement purposes. *See* Dkt No. 145; Transcript,

---

[7] Unless otherwise noted, all internal citations are omitted and emphasis is added.

Ex. 1 to Kim Decl. Plaintiffs respectfully submit that no circumstances have changed since that certification was granted. Thus, there are no issues that would prevent the Court from certifying this Class for settlement purposes and appointing Lead Plaintiffs as Class Representatives.

## V.    THE PROPOSED SETTLEMENT SHOULD BE APPROVED AS FAIR, REASONABLE, AND ADEQUATE

Lead Plaintiffs believe that the claims asserted herein are strong and have sufficient evidence to demonstrate Defendants' liability and millions of dollars in damages stemming from it. Nevertheless, Lead Plaintiffs recognize and acknowledge the inherent problems of proof under, and possible defenses to, the securities law violations alleged and the time commitment and expense of prosecuting the case through class certification, summary judgment, trial and appeal. Consequently, Lead Plaintiffs believe that the proposed Settlement is an excellent result, particularly in light of KiOR's bankruptcy.  Kim Decl. at ¶ 11.

For their part, Defendants have denied, and continue to deny, all charges of wrongdoing or liability against them arising out of any of the claims alleged in the TAC. Nonetheless, Defendants have concluded that further litigation would be protracted and expensive, and that it is desirable that this litigation be fully and finally settled in the manner and upon the terms and conditions set forth in the Stipulation. As did Lead Plaintiffs, Defendants have taken into account the risks inherent in any litigation, especially in complex cases such as this one.

As set forth below, the proposed Settlement is not only an excellent result from the perspective of Lead Plaintiffs, Defendants, and their respective counsel, but it meets all of the objective requirements for an approvable settlement established by the Fifth Circuit and its district courts.

## A. There Is a Presumption in Favor of Settlements, Especially of Securities Class Actions; Settlements Proposed by Competent and Experienced Counsel Are Presumed to Be Fair

It is well settled that compromises of disputed claims are favored by the courts. *Williams v. First Nat. Bank*, 216 U.S. 582, 595 (1910). The Fifth Circuit has repeatedly held that settlements enjoy a highly-favored status, and "'will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits.'" *Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 428 (5th Cir. 1977) (quoting *Pearson v. Ecological Science Corp.*, 522 F.2d 171, 176 (5th Cir. 1975)).  Settlements of class actions arising from federal statutory claims, including securities litigation, are "particularly favored."  *See, e.g., Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983) (courts "do not lightly reject [shareholder litigation] settlements"); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) (settlements of Title VII actions are strongly favored). "[T]here is an overriding public interest in favor of settlement" because class actions "have a well deserved reputation as being most complex."  *Cotton*, 559 F.2d at 1331.

In determining whether to approve a settlement, courts are not required to decide the merits of the action or substitute their own judgment for that of the parties or that of counsel.  *See Maher*, 714 F.2d at 455. The Fifth Circuit has acknowledged that courts must rely to a large degree on the judgment of competent counsel, terming such counsel the "linchpin" of an adequate settlement. *Reed v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983). Thus, if experienced counsel determines that a settlement is in the class's best interests, "the attorney's views must be accorded great weight."  *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1216 (5th Cir. 1978).

9

**B.     The Proposed Settlement Readily Satisfies the Fifth Circuit's Standards for Settlement**

In deciding whether or not to approve a settlement, courts within the Fifth Circuit must ask whether the parties' proposed settlement is "fair, adequate and reasonable" and has been entered into without any collusion.  *Cotton*, 559 F.2d at 1330; *Ruiz v. McKaskle*, 724 F.2d 1149, 1152 (5th Cir. 1984); *Parker v. Anderson*, 667 F.2d 1204, 1208-09 (5th Cir. 1982); *Ayers v. Thompson*, 358 F.3d 356, 368 (5th Cir. 2004); *Ibarra v. Texas Employment Comm'n*, 823 F.2d 873, 878 (5th Cir. 1987); *In re Educ. Testing Serv. Praxis Principles of Learning & Teaching: Grades 7-12 Litig.*, 447 F. Supp. 2d 612, 619 (E.D. La. 2006) ("*ETS*").  In applying this standard, the court must determine whether, in light of the claims and defenses asserted by the parties, the proposed compromise represents a "reasonable evaluation of the risks of litigation." *Florida Trailer & Equipment Co. v. Deal*, 284 F.2d 567, 571 (5th Cir. 1960).

In weighing the benefits obtained by the settlement against the potential benefits available should one side or the other prevail at trial (and preserve its victory on appeal), courts cannot expect the scales of justice to balance perfectly.  Proponents of a settlement should not be made to "justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes." *Cotton*, 559 F.2d at 1330. The very object of a compromise "is to avoid the determination of sharply contested and dubious issues."  *Young v. Katz*, 447 F.2d 431, 433 (5th Cir. 1971).

The ultimate question for the court to determine in evaluating a proposed settlement "is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval." *McNary v. Am. Sav. & Loan Ass'n.*, 76 F.R.D. 644, 649 (N.D. Tex. 1977); *Rubenstein v. Republic Nat'l. Life Ins. Co.*, 74 F.R.D. 337, 347 (N.D. Tex. 1976).  To answer this question, the

Fifth Circuit inquires about the following six factors: (1) whether the settlement was a product of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery and the certainty of damages; and (6) the opinions of the participants, including class counsel, class representatives, and the absent class members. *Reed,* 703 F.2d at 172; *In re Lease Oil Antitrust Litig. (No. II)*, 186 F.R.D. 403, 431-35 (S.D. Tex. 1999) (citing *Reed*); *Parker*, 667 F.2d at 1209; *Salinas v. Roadway Express, Inc.*, 802 F.2d 787, 789 (5th Cir. 1986); *ETS*, 447 F. Supp. 2d at 619; *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 843 (E.D. La. 2007). As demonstrated below, the Settlement is fair and reasonable when examined under these six criteria

### 1.     The Settlement Is Not the Product of Fraud or Collusion

There is no doubt that settlement negotiations here took place at arm's length. The parties engaged the services of Robert Meyer, Esq. of JAMS, a nationally regarded and impartial mediator, to assist the parties by providing an objective assessment of the strengths and weaknesses of their respective positions. Kim Decl. at ¶ 45. Following an exchange of mediation position statements, a full day of mediation and frank discussions with the aid of the mediator, the parties eventually reached an agreement in principle to settle the case, and further negotiated the detailed terms and conditions of the settlement in the weeks that followed. *Id*. at ¶¶ 45-47. Rather than being the result of fraud, collusion or overreaching, this settlement is the product of extensive arms-length negotiations (aided by a neutral mediator).

### 2.     The Complexity, Expense and Likely Duration of this Litigation

Courts value a certain and immediate recovery for plaintiffs, as opposed to the mere prospect of a big payday in the future: "it [is] proper to take the bird in the hand instead of a prospective flock in the bush." *In re Shell Oil Refinery*, 155 F.R.D. 552, 560 (E.D. La. 1993)

11

(quoting *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974)); *see ETS*, 447 F. Supp. 2d at 620 ("an early settlement that obviated these delays and the risks of having to litigate the claims makes sense"). This maxim holds especially true for securities class actions governed by the unique pleading and proof requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA").  15 U.S.C. § 78u-4.

Due to the high-stakes nature of this type of litigation, Defendants are represented by two prestigious law firms—Wilmer Cutler Pickering Hale and Dorr LLP and Jones Day—whose attorneys have considerable experience with securities litigation, responding to and prevailing over such a vigorous defense would necessarily increase the costs of litigation for Lead Plaintiffs and the class.

While Lead Plaintiffs believe they can prevail in this Action, they faced material challenges including class certification, summary judgment, and trial. Should Lead Plaintiffs' claims survive Defendants' summary judgment motions, it would take several weeks to try the claims. The trial would be complex and expensive as both sides would likely have numerous experts opining on damages, loss causation, and class issues—this does not include the extensive *Daubert* motion practice that would precede such testimony.

Not only would litigating this case through trial require an extraordinary commitment of time, money, and resources by Plaintiffs' Counsel, the likelihood of an appeal should Lead Plaintiffs prevail would force Class Members to wait even longer to see a recovery (if any). This lengthy delay reduces the present value of a hypothetical victory when compared to the certainty of an immediate settlement—one which eliminates the risk of ultimately recovering nothing. *See Strougo v. Bassini*, 258 F. Supp. 2d 254, 260-61 (S.D.N.Y. 2003) ("Even if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation and

trial, the passage of time would introduce yet more risks in terms of appeals and possible changes in the law and would, in light of the time value of money, make future recoveries less valuable than this current recovery"); *In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1396, 1405 (E.D.N.Y. 1985) ("much of the value of a settlement lies in the ability to make funds available promptly") (modified on other grounds).

### 3. The Stage of the Proceeding at Which Settlement Was Achieved and the Amount of Discovery Completed

This factor inquires as to whether "the parties and the district court possess ample information with which to evaluate the merits of the competing positions." *Ayers,* 358 F.3d at 369. Courts are mindful of the interplay between this factor and other important considerations: "The law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992). Indeed, "'[a] settlement may be approved even where plaintiffs have not conducted formal discovery where plaintiffs ... have access to the desired quantum of information necessary to achieve a settlement.'" *Jenkins v. Trustmark Nat. Bank*, 300 F.R.D. 291, 304 (S.D. Miss. 2014), (*quoting Lease Oil*, 186 F.R.D. at 432, and *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981)).

Because of the high bar set by the PSLRA for pleading the elements of falsity and scienter in a securities fraud action, prior to filing the Complaint, Plaintiffs' Counsel conducted an extensive independent investigation of a wide variety of public sources, including the Company's U.S. Securities and Exchange Commission filings and numerous news articles and analyst reports concerning the Company's business and financial condition. Kim Decl. at ¶ 6. Plaintiffs' Counsel also conducted interviews with several former Company executives and reviewed documents provided by a former employee. *Id.* Such an investigation can suffice to

13

give plaintiffs enough information to settle. *In re Dell Inc.*, No. A-06-CA-726-SS, 2010 WL 2371834, at *8 (W.D. Tex. June 11, 2010). Additionally, Plaintiffs' Counsel engaged in extensive discovery by reviewing thousands of documents produced by Defendants as well as third parties.

Furthermore, the Court's ruling on Defendants' motions to dismiss allowed Plaintiffs' Counsel to assess the strength of their case against the defenses that would be raised during the remaining stages of the action. *See e.g., In re Remeron Direct Purchaser Antitrust Litig.*, No. Civ.03-0085 FSH, 2005 WL 3008808, at *6 (D.N.J. Nov. 9, 2005) (motion practice allowed plaintiffs "to preview some of the defenses that Defendants would advance"); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1064 (S.D. Tex. 2012) (under this factor, "the key issue is whether the parties and the district court possess ample information with which to evaluate the merits of the competing positions, . . . The sufficiency of information does not depend on the amount of formal discovery which has been taken because other sources of information may be available . . . even when little or no formal discovery has been completed.").  Lead Plaintiffs have also had the opportunity to review documents produced in this action by Defendants and third parties which enabled them to evaluate the Settlement. Consequently, Lead Plaintiffs have already expended quite a lot of time, effort, and money evaluating the merits of the claims alleged. For these reasons, the parties possess "sufficient information about the strengths and weaknesses of their respective cases to make a reasoned judgment about the desirability of settling the case."  *ETS*, 447 F. Supp. 2d at 620; *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985) ("the parties certainly have a clear view of the strengths and weaknesses of their cases").

### 4.     The Probability of Success on the Merits

Despite Lead Plaintiffs' and Plaintiffs' Counsel's confidence in the strength of their case, for the many reasons stated above, proof of liability and damages could prove quite difficult. As a result, it would be "imprudent to presume ultimate success at trial and thereafter."  *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *7 (C.D. Cal. June 10, 2005) (collecting cases where courts rejected proposed settlement and the ultimate recovery to plaintiffs turned out to be lower than that in the proposed settlement).

Therefore, in evaluating the likelihood of success, a court "must compare [the terms of the settlement] with the likely rewards the class would have received following a successful trial of the case." *Reed, supra*, 703 F.2d at 172; *see also In re Prohibition Against Disclosing ENE Commc'ns to Settlement Judges*, 494 F. Supp. 2d 1097, 1105 (N.D. Cal. 2007) ("Most judges… understand that the task of analyzing a case and trying to predict the outcome of litigation is fraught with analytical and informational perils"). A defendants' potential inability to fund any recovery weighs heavily on this assessment. *See Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316, 344-45 (N.D. Tex. 2011) ("[T]he Court is of the opinion that the potential result strongly favors approval of the settlement. If the class action had proceeded to trial and the class was to prevail, recovery from Capital Financial, which … is perilously undercapitalized, would be extremely difficult … Even if the class were victorious, however, the 'likely rewards' to the class would likely be even smaller than what is currently contemplated because Capital Financial would have few assets to fund any award they receive").

Here, Lead Plaintiffs faced substantial risks in going forward with litigating this case. *See, Garza v. Sporting Goods Properties, Inc.*, 1996 WL 56247, at *33 (W.D. Tex. Feb. 6, 1996) (factors such as financial burden on counsel and time demands of litigating class actions of this size and complexity have caused cases to be considered "undesirable").  In addition to the usual

15

difficult task of establishing Defendants' fraudulent state of mind, this case involved the real problem of establishing that the series of partial disclosures—Defendants' statements concerning the operations at the Columbus Facility—caused the losses in the price of its stock, and by how much.

Here, Defendants have and certainly would continue to argue that Lead Plaintiffs could not establish that the alleged misstatements were actually misleading as Defendants claim that everything they said regarding the operations at the Columbus Facility was accurate. Moreover, Defendants would also vigorously argue that the evidence failed to demonstrate scienter, since they claim their statements were not misleading.

### 5. The Range of Possible Recovery and the Difficulty of Proving Damages

"[A]fter determining if any legal or factual obstacles exist, a district court must make an inquiry into whether the settlement's terms fall within a reasonable range of recovery, given the likelihood of the plaintiffs' success on the merits." *Turner*, 472 F. Supp. 2d at 849-50. In assessing this factor, the Court "can take into account the challenges to recovery at trial that could preclude the class from collecting altogether, or from only obtaining a small amount." *Klein v. O'Neal, Inc*., 705 F. Supp. 2d 632, 656 (N.D. Tex. 2010).

Lead Plaintiffs' damages expert performed a damages study and calculated class-wide damages based upon the material misrepresentations alleged in the Complaint, estimating damages of the statistically significant stock drops to equal $20,997,664. Kim Decl. at ¶11. The settlement of $4,500,000 represents approximately 21.4% of estimated damages, which is an excellent result and well within the average recovery as a percentage of damages in securities class action lawsuits. *See, e.g., In re Prudential Sec., Inc. L.P. Litig*., MDL No. 1005, M–21–67 (MP), 1995 WL 798907, at *15 (S.D.N.Y. Nov. 20, 1995) (approving settlement of between

16

1.6% and 5% of claimed damages); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (between 1995 and 2001, class action settlements recovered between 5.5% and 6.2% of estimated losses); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 241 (3d Cir. 2001) (recoveries in securities class actions typically range from 1.6% to 14% of total losses).[8]

In light of KiOR's bankruptcy as noted above—and the discount Lead Plaintiffs must attribute to any judgment as a result—the settlement achieved is fair, adequate, and reasonable. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982); *Smith v. Tower Loan of Mississippi, Inc.*, 216 F.R.D. 338, 369 (S.D. Miss. 2003) (same); *see also City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir. 1974) ("In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.") (abrogated on other grounds by *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)). Here, the Settlement represents approximately 21.4% of Lead Plaintiffs' estimated damages of all the statistically significant stock drops. When compared with the "present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing," *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004), the Settlement is abundantly fair, reasonable and adequate.

---

[8] Settlements with lower-percentage recoveries than in the instant action have been regularly approved. In 2016, the median settlement as a percentage of estimated damages for settlements under $50 million was 7.3%, Ex. 3 to Kim Decl.

**6.    The Opinions of Plaintiffs' Counsel and the Settlement Class Members Favor Approval of the Settlement Approval**

Because counsel have the best perspective of the strengths and weaknesses of their clients' positions, a proposed class action settlement will enjoy a "presumption of correctness" where the settlement is the product of "arms length negotiations between experienced, capable counsel after meaningful discovery." *San Antonio Hispanic Police Officers' Org., Inc. v. City of San Antonio*, 188 F.R.D. 433, 461 (W.D. Tex. 1999); *see also In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 235, 255 (D.N.J. 2000) (affording "significant weight" to counsel's recommendation). In fact, "[t]he endorsement of class counsel is entitled to deference" for this very reason. *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 292 (W.D. Tex. 2007); *see also Lelsz v. Kavanagh*, 783 F. Supp. 286, 297 (N.D. Tex. 1991) ("the judge should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation, and a presumption of correctness is said to attach to a class settlement reached in arms length negotiations between experienced, capable counsel after meaningful discovery"). Counsel for Defendants and Lead Plaintiffs engaged in arm's length negotiations to reach the Settlement. While formal discovery was still underway, as explained above, Plaintiffs' Counsel had conducted an extensive investigation and evaluated the strengths and weaknesses of Lead Plaintiffs' case.  By proposing the Settlement to Class Members and the Court, Plaintiffs' Counsel endorses the instant settlement as fair, reasonable, and adequate.

Class Members appear to agree.  Pursuant to the Court's order, 22,786 Notice and Claim Forms were sent to Class Members and the Summary Notice was published once over *GlobeNewswire* and once in the *Investors' Business Daily*. *See* Bravata Decl., ¶¶ 6, 10. The deadline to object to any aspect of the Settlement is May 9, 2017. *Id*. at ¶ 13. The deadline to

exclude oneself from the Settlement is May 9, 2017. *Id*. at ¶ 12. To date, no objections and only one request for exclusion has been received. *Id*. at ¶¶ 12-13.

Class members' assessment of the settlement, expressed either directly or indirectly by their failure to object, is an additional factor on which district courts rely to determine objective fairness. *See Turner,* 472 F. Supp. 2d at 852 (only two objections out of 3800 potential claimants strongly favored settlement approval); *In re Train Derailment Near Amite, La.*, No. Civ. A. MDL No. 1352, 2006 WL 1561470, at *13 (E.D. La. May 24, 2006) (lack of class member objections to the fairness of the proposed settlement considered a factor in approving settlement); *In re MicroStrategy, Inc. Sec. Litig.*, 150 F. Supp. 2d 896, 906 (E.D. Va. 2001) ("perhaps the most significant factor" in determining whether a settlement is adequate is the class's reaction to it).[9]

## VI. THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

The objective of a plan of allocation is to provide an equitable basis upon which to distribute the Net Settlement Fund among eligible Class Members. A court's assessment of the validity of a plan of allocation is governed by practically the same standards of review applicable to the settlement as a whole – the plan must be fair and reasonable. *See In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982); *In re IKON Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992). District courts enjoy "broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members ... equitably." *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978); *accord In re Chicken Antitrust*, 669 F.2d at 238.

---

[9] This Court certified the class preliminarily and for settlement purposes. *See* Dkt. No. 145; Transcript, Ex. 1 to Kim Decl.

When formulated by competent and experienced class counsel, an allocation plan need have only a "reasonable, rational basis." *Hicks v. Morgan Stanley*, No. 01 CIV. 10071 (RJH), 2005 WL 2757792, at *7 (S.D.N.Y. Oct. 24, 2005); *In re Global Crossing Sec. & ERISA Litig*. 225 F.R.D. 436, 462 (S.D.N.Y. 2004); *White v. NFL*, 822 F. Supp. 1389, 1424 (D. Minn. 1993); *In re Gulf Oil/ Cities Serv. Tender Offer Litig*., 142 F.R.D. 588, 596 (S.D.N.Y. 1992).  Plaintiffs submit that the proposed Plan of Allocation is fair and reasonable and should be given final approval together with the Settlement.

The proposed Plan of Allocation was fully described in the Notice sent to the Class, at pages 5-8 thereof. *See* Bravata Decl., Ex. A. It was formulated by Plaintiffs' Counsel, in consultation with a damages consultant, with the goal of reimbursing Class members in a fair and reasonable manner consistent with the federal securities laws as applied to Plaintiffs' theory of the case.  Specifically, the Settlement Fund will be allocated based on Plaintiffs' estimate of the amounts by which the value of KiOR stock was artificially inflated at various points during the Class Period. The Plan of Allocation was carefully crafted by Plaintiffs' Counsel to reasonably and rationally apportion the Net Settlement Fund in an equitable manner, and therefore it meets all requirements for this Court's approval.

## VII.   CONCLUSION

For the reasons stated above, as well as in any later-filed reply papers, and at the Settlement Hearing, Lead Plaintiffs respectfully request that the Settlement and Plan of Allocation be approved.

Dated: April 26, 2017                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

/s/ Phillip Kim
Phillip Kim, Esq. (*pro hac vice*)
Laurence M. Rosen, Esq. (*pro hac vice*)

275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

**LEVI & KORSINSKY LLP**
Nicholas I. Porritt, Esq. (*pro hac vice*)
Adam M. Apton, Esq. (*pro hac vice*)
1101 30th Street NW, Suite 115
Washington, D.C. 20007
Telephone: (202) 524-4290
Fax: (202) 333-2121
Email: nporritt@zlk.com
Email: aapton@zlk.com

*Lead Counsel for Lead Plaintiffs and Class*

**GASCOYNE & BULLION, P.C.**
James Gascoyne
77 Sugar Creek Center Blvd.
Sugar Land, Texas 77478
Tel: 281-340-7000

*Liaison Counsel for Lead Plaintiffs and Class*

21

**CERTIFICATE OF SERVICE**

I hereby certify that on the 26th of April, 2017, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ Phillip Kim
Phillip Kim