UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DAVE CARLTON, *et al.*, | No.: 4:15-cv-00012 |
| Plaintiffs, | CLASS ACTION |
| v. | |
| FRED CANNON, *et al*., | Chief Judge Lee H. Rosenthal |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND COMPENSATORY AWARD TO LEAD PLAINTIFFS**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   PLAINTIFFS' COUNSEL'S FEE REQUEST IS FAIR AND REASONABLE ............... 4

   A.    Attorneys' Fees Should Be Awarded From the Settlement's Common Fund ........ 4

   B.    The Court Should Award Attorneys' Fees Using the Percentage of Recovery Method ............................................................................................................ 5

   C.    An Award of 33 1/3% of the Gross Settlement Fund Is Appropriate .................... 7

   D.    Application of the *Johnson* Factors Supports Lead Counsel's Request for a 33 1/3% Fee ......................................................................................................... 8

      1.    The Time and Labor Required .................................................................. 9

      2.    Novelty and Difficulty of the Issues ......................................................... 11

         (a)    Liability Could Be Difficult to Prove ........................................... 11

         (b)    Obtaining Class Certification and Proving Recoverable Damages Could Be Difficult .................................................................... 12

      3.    Skill Required: the Experience, Reputation, and Ability of the Attorneys 14

      4.    The Preclusion of Other Employment ...................................................... 15

      5.    The Customary Fee for Similar Work in the Community ........................ 15

      6.    Whether the Fee Is Fixed or Contingent .................................................. 15

      7.    Time Limitations Imposed by the Client or the Circumstances ............... 16

      8.    The Amount Involved and the Results Obtained ...................................... 16

      9.    The Undesirability of the Case ................................................................. 16

      10.   The Nature and Length of the Professional Relationship with the Client  17

      11.   Awards in Similar Cases .......................................................................... 17

   E.    The Class's Reaction to The Fee Request ......................................................... 18

   F.    A Lodestar Cross-Check Confirms the Reasonableness of the Requested Fee .... 19

   G.    Plaintiffs' Counsel's Expenses Were Reasonably And Necessarily Incurred in the Prosecution of this Action ............................................................................... 20

III.  THE PROPOSED LEAD PLAINTIFF AWARDS SHOULD BE GRANTED .............. 21

IV.   CONCLUSION .................................................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aranaz, et al., v. Catalyst Pharmaceutical Partners, Inc., et al.,*
1:13-cv-23878 (S.D.Fl.)(Dkt No. 153) ................................................................. 22

*Barton v. Drummond Co.,*
636 F.2d 978 (5th Cir. 1981) ............................................................................... 4

*Bergquist v. FyBX Corp.,*
No. Civ.A. 02-722, 2003 WL 22081368 (E.D. La. Aug. 29, 2003) ...................................... 12

*Billitteri v. Sec. Am., Inc.,*
No. 11-cv-00191, 2011 WL 3585983 (N.D. Tex. Aug. 4, 2011) .................................... 15, 17

*Boeing Co. v. Van Gemert,*
444 U.S. 472 (1980) ............................................................................................... 4

*Branca v. First USA Paymentech, Inc.,*
No. 3:97- CV-2507-L, Order and Final Judgment, ECF No. 59  (N.D. Tex. Jan. 4. 2001) ... 18

*Braud v. Transp. Serv. Co. of Ill.,*
No. 05-1898, 2010 WL 3283398 (E.D. La. Aug. 17, 2010) ................................... 17

*Burford v. Cargill, Inc.,*
No. 05-0283, 2012 WL 5471985 (W.D. La. Nov. 8, 2012) ............................................ *passim*

*City of Providence v. Aeropostale, Inc.,*
No. 11 CIV. 7132(CM)(GWG), 2014 WL 1883494 (S.D.N.Y. May 9, 2014) ...................... 20

*Di Giacomo v. Plains All Am. Pipeline,*
No. Civ.A. H-99-4137, 2001 WL 34633373 (S.D. Tex. Dec. 19, 2001) .................... 10, 19, 21

*Evans v. TIN, Inc.,*
No. 11-2067, 2013 WL 4501061 (E.D. La. Aug. 21, 2013) ............................................ 7, 19

*Faircloth v. Certified Fin. Inc.,*
No. Civ. A. 99-3097, 2001 WL 527489 (E.D. La. May 16, 2001) .................................. 17, 21

*Finkel v. Docutel/Olivetta Corp.,*
CA3– 84–0566–T (N.D. Tex. Feb. 23, 1990) ......................................................... 18

*Goldstein v. MCI WorldCom,*
340 F.3d 238 (5th Cir. 2003) ............................................................................... 11

*Gunter v. Ridgewood Energy Corp.*,
223 F.3d 190 (3d Cir. 2000) ............................................................................. 5, 6

*Halliburton Co. v. Erica P. John Fund, Inc.*,
134 S. Ct. 2398 (2014) ..................................................................................... 12

*Hicks v. Stanley*,
No. 01 CIV. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ............................ 21

*In re Bayou Sorrel Class Action*,
No. 6:04cv1101, 2006 WL 3230771 (W.D. La. Oct. 31, 2006). ........................................ 4, 8

*In re Catfish Antitrust Litig.*,
939 F. Supp. 493 (N.D. Miss. 1996) ............................................................... *passim*

*In re Cendant Corp. Sec. Litig.*,
404 F.3d 173 (3d Cir. 2005) ................................................................................. 7

*In re Chambers Dev. Sec. Litig.*,
912 F. Supp. 852 (W.D. Pa. 1995) .......................................................................... 7

*In re Combustion, Inc.*,
968 F. Supp. 1116 (W.D. La. 1997) ................................................................. *passim*

*In re DrKoop.com*,
No. 00-CA-427-JRN, ECF No. 48 (W.D. Tex. Nov. 14, 2001) .............................................. 18

*In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig.*,
447 F. Supp. 2d 612 (E.D. La. 2006) ........................................................................ 6

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
586 F. Supp. 2d 732 (S.D. Tex. 2008) ..................................................................... 16

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000) ........................................................................... 11

*In re Indep. Energy Holdings PLC Sec. Litig.*,
No. 00 Civ. 6689(SAS), 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ................................. 12

*In re Lomas Fin. Corp. Sec. Litig.*,
No. CA–3–89–1962–G (N.D. Tex. Jan. 28, 1992) .......................................................... 18

*In re Marsh & McLennan Co. Inc. Sec. Litig.*,
No. 04 cv 08144, 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) .......................................... 22

*In re Prudential Ins. Co.*,
148 F.3d 283 (3d Cir. 1998) ................................................................................. 6

*In re Rent-Way Sec. Litig.,*
  305 F. Supp. 2d 491 (W.D. Pa. 2003) ................................................................. 18

*In re Rite Aid Corp. Sec. Litig.,*
  146 F. Supp. 2d 706 (E.D. Pa. 2001) .................................................................. 21

*In re Rite Aid Corp. Sec. Litig.,*
  396 F.3d 294 (3d Cir. 2005) ................................................................................ 6

*In re Star Scientific, Inc., Securities Litigation,*
  3:13-cv-00183 (E.D.Va) ...................................................................................... 22

*In re Sumitomo Copper Litig.,*
  74 F. Supp. 2d 393 (S.D.N.Y. 1999) .................................................................. 19

*In re Suprema Specialties, Inc. Sec. Litig.,*
  No. 02-168(WHW), 2008 WL 906254 (D.N.J. Mar. 31, 2008) ........................... 11

*In re The Mills Corp. Sec. Litig.,*
  265 F.R.D. 246 (E.D. Va. 2009) ......................................................................... 22

*In re Veeco Instruments Inc. Sec. Litig.,*
  No. 05 MDL 01695(CM), 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007); ............. 20

*In re Vioxx Prod. Liab. Litig.,*
  MDL No. 1657, 2013 WL 5295707 (E.D. La. Sept. 18, 2013) ............................ 17

*In re Vitamin C Antitrust Litig.,*
  No. 06-MD-1738(BMC)(JO), 2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) ........ 21

*In re Warner Commc'ns. Sec. Litig.,*
  618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ................. 14

*In re Xcel Energy,*
  364 F. Supp. 2d 980 (D. Minn. 2005) ............................................................ 10, 22

*In re Zonagen, Inc. Sec. Litig.,*
  322 F. Supp. 2d 764 (S.D. Tex. 2003) ................................................................ 13

*Int'l Woodworkers of Am., AFL-CIO & Its Local No. 5-376 v. Champion Int'l Corp.,*
  790 F.2d 1174 (5th Cir. 1986) ........................................................................... 16

*Jenkins v. Trustmark Nat'l. Bank,*
  300 F.R.D. 291 (S.D. Miss. 2014) ............................................................. *passim*

*Johnson v. Georgia Highway Express,*
  488 F.2d 714 (5th Cir. 1974) .................................................................... *passim*

iv

*Jones v. Diamond,*
   636 F.2d 1364 (5th Cir. 1981) ............................................. 15

*Kitson v. Bank of Edwardsville,*
   No. 08-507, 2010 WL 331730 (S.D. Ill. Jan. 25, 2010) ...................... 18

*Kleinman v. Harris,*
   No. 3:89–CV–1869–X (N.D. Tex. June 21, 1993) ............................ 17

*Levitin v. A Pea in the Pod, Inc.,*
   No. 3:94-CV-0247, Final Judgment and Order of Dismissal With Prejudice, ECF No. 213
   (N.D. Tex. Mar. 27, 1998) ............................................... 18

*Lindsey v. Memphis-Shelby Cty. Airport Auth.,*
   229 F.3d 1150 (6th Cir. 2000) ........................................... 13

*Maher v. Zapata Corp.,*
   714 F.2d 436 (5th Cir. 1983) ............................................ 11

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit,*
   547 U.S. 71 (2006) ....................................................... 5

*R2 Invs. LDC v. Phillips,*
   401 F.3d 638 (5th Cir. 2005) ............................................ 12

*Reichman v. Bonsignore, Brignati & Mazzotta P.C.,*
   818 F.2d 278 (2d Cir. 1987) ............................................. 20

*Schwartz v. TXU Corp.,*
   No. 3:02-CV-2243-K, 2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ........... *passim*

*Shaw v. Toshiba Am. Info. Sys., Inc.,*
   91 F. Supp. 2d 942 (E.D. Tex. 2000) ................................... 8, 14

*Stoetzner v. U.S. Steel Corp.,*
   897 F.2d 115 (3d Cir. 1990) ............................................. 18

*Streber v. Hunter,*
   221 F.3d 701 (5th Cir. 2000), *reh'g en banc denied*, 233 F.3d 576 (5th Cir. 2000) ............. 13

*Teichler v. DSC Commc'ns Corp.,*
   CA 3–85–2005–T (N.D. Tex. Oct. 22, 1990) ............................... 17

*Tellabs, Inc. v. Makor Issues & Rights. Ltd.,*
   551 U.S. 308 (2007) ...................................................... 5

*Turner v. Murphy Oil USA, Inc.,*
   472 F. Supp. 2d 830 (E.D. La. 2007) ..................................... 19

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
    669 F.3d 632 (5th Cir. 2012) ........................................................................................ *passim*

**Statutes**

15 U.S.C. §78u- 4(a)(4) ............................................................................................... 21

15 U.S.C. §78u– 4(a)(6) ................................................................................................. 6

**Rules**

Fed. R. Civ. P. 23 ........................................................................................................... 1

**Other Authorities**

Denise N. Martin, Vinita M. Juneja, Todd S. Foster & Frederick C. Dunbar,
    *Recent Trends IV: What Explains Filings and Settlements in Shareholder Class Actions?*
    (NERA Economic Consulting, 1996) ........................................................................... 8

Manual on Complex Litigation (4th) §14.121 ............................................................... 6

Report of Third Circuit Task Force: Court Awarded Attorney Fees,
    108 F.R.D. 237 (1986) ................................................................................................. 6

Lead Plaintiffs Dave Carlton and Sharon Kegerreis ("Lead Plaintiffs")[1] hereby move this Court, pursuant to Fed. R. Civ. P. 23 for the entry of an Order: (i) awarding $1,500,000 in cash as attorneys' fees; (ii) approving the reimbursement of expenses incurred by counsel in successfully prosecuting and resolving this litigation in the amount of $177,695.18, and (iii) approving compensatory awards in the total amount of $15,000 for Lead Plaintiffs.

## I. INTRODUCTION[2]

The Settlement obtained by Plaintiffs' Counsel[3] on behalf of the Settlement Class represents an excellent recovery and an above average settlement recovery in securities class action litigation. When accounting for the statistically significant stock drops during the Class Period, the settlement recovers over 21% of the Class's estimated damages of $20,997,664.[4] *See* Kim Decl. at ¶ 11[5].

---

[1] All capitalized terms not defined herein shall have the same meaning as set forth in the Stipulation and Agreement of Settlement, dated February 14, 2017, filed with the Court on February 14, 2017. ("Stipulation") Dkt. No. 141.

[2] A description of the claims alleged and the procedural history of the action are set forth in Sections II and III of Lead Plaintiffs' Memorandum of Law In Support Of Motion For Final Approval Of Class Action Settlement And Final Approval Of Plan Of Allocation of Settlement Proceeds ("Final Approval Memorandum") filed herewith. So as not to burden the Court with repetitive information, Lead Plaintiffs incorporate those sections by reference herein. All capitalized terms in the Final Approval Memorandum have the same meaning when capitalized herein.

[3] "Plaintiffs' Counsel" includes Lead Counsel The Rosen Law Firm, P.A. and Levi & Korsinsky LLP, as well as Liaison Counsel Gascoyne & Bullion, P.C. and additional liaison counsel Gresham P.C.

[4] If accounting for all potential stock drops, including statistically insignificant drops, the settlement would recover over 9.76% of estimated damages of $46,100,000. Courts usually do not account for statistically insignificant stock drops.

[5] Citations to Kim Decl. ¶ __ are to the Declaration of Phillip Kim in Support of Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation, and Lead

Plaintiffs' Counsel devoted substantial time and financial resources in prosecuting this action to achieve this recovery. Prior to drafting the complaints filed herein on behalf of Lead Plaintiffs, Plaintiffs' Counsel: conducted an exhaustive search of all public information available about Mard, Inc. f/k/a KiOR, Inc. ("KiOR" or the "Company") and its senior management, including both its U.S. Securities and Exchange Commission filings and articles; retained a private investigator to interview percipient witnesses; and reviewed a number of analyst reports written about the Company before, during, and after the alleged class period. After Defendants filed motions to dismiss the SAC and TAC, Plaintiffs' Counsel researched and drafted opposition papers for those motions. After the motion to dismiss the TAC was denied in part, Plaintiffs' Counsel engaged in formal discovery reviewing thousands of documents produced by Defendants and third parties. Following KiOR's bankruptcy filing, Plaintiffs' Counsel represented the interests of the Class by preserving the Class's claims and insurance proceeds available for payment to the Class by filing a Proof of Claim, retaining bankruptcy counsel and consultants, objecting to the confirmation plan, and attending hearings and presenting testimony and argument in the KiOR's bankruptcy proceeding. Furthermore, Plaintiffs' Counsel defended the Class's claims in an Adversary Proceeding initiated by KiOR's trustee.

In conjunction with the proposed Settlement, after substantial discovery was completed, Plaintiffs' Counsel prepared a comprehensive statement for mediation, engaged in a full day mediation session with Defendants, and negotiated the detailed terms and conditions of the settlement papers over a number of weeks. Lead Plaintiffs then filed the Stipulation and a motion seeking preliminary approval of the Settlement. Following this Court granting preliminary approval, Plaintiffs' Counsel established the escrow fund for the Settlement proceeds and

Plaintiffs' Motion for an Award of Attorneys' Fees and Reimbursement of Expenses and Award to Lead Plaintiffs.

2

worked with the claims administrator to ensure that adequate and sufficient notice was published and mailed pursuant to the Court's direction. *See* Kim Decl. at ¶ 7; *See* Bravata Decl. ¶¶ 3-8.[6]

Having obtained a significant recovery for the Class, Plaintiffs' Counsel, which have pursued this case on a fully contingent basis, requests attorneys' fees of one-third of the Settlement Fund ($1,500,000 in cash). Pursuant to the Court's order during the preliminary approval hearing held on February 16, 2017, at this time Plaintiffs' Counsel seeks approval of its entire fee request – $1,500,000 – but asks the Court to permit Plaintiffs' Counsel to withdraw 25% of their requested fee, or $375,000, after the Effective Date and the remaining 75% of the requested fee, or $1,125,000, upon Plaintiffs' Counsel forthcoming motion detailing the first distribution of the funds to Authorized Claimants. *See* Transcript of the February 16, 2017 hearing attached as Exhibit 1 to the Kim Decl.

Plaintiffs' Counsel also requests reimbursement of $177,695.18 in out-of-pocket expenses, which were advanced for the conduct of this litigation and which were necessarily and reasonably incurred to prosecute this case. In addition, Lead Plaintiffs request a reasonable compensatory award totaling $15,000 (or $7,500 each) for the time they spent actively litigating and managing this case. *See* Exhibits 8 and 9 to the Kim Decl., Declarations of Lead Plaintiffs Dave Carlton and Sharon Kegerreis. The requested attorneys' fees and expenses as well as the Lead Plaintiff awards were set forth in the Notice distributed to the Class. There has not been a single objection to either which evidences the reasonableness of the request. Bravata Decl. at ¶ 13.

---

[6] Citations to Bravata Decl. ¶ __ are to the Declaration of Josephine Bravata Concerning the Mailing of the Notice of Pendency and Proposed Settlement of Class Action and Proof of Claim and Release Form, attached as Exhibit 2 to the Kim Decl.

For all these reasons, and based on the supporting documentation submitted herewith[7], Lead Plaintiffs and Plaintiffs' Counsel believe the requested amounts are fair, reasonable, and just in light of the results achieved, and they respectfully request that the Court award them in full.

## II.     PLAINTIFFS' COUNSEL'S FEE REQUEST IS FAIR AND REASONABLE

Plaintiffs' Counsel's thorough and sustained effort was critical in obtaining a substantial and certain recovery for the Class. As such, Plaintiffs' Counsel respectfully requests that the Court grant its request of $1,500,000 in attorneys' fees.

### A.     Attorneys' Fees Should Be Awarded From the Settlement's Common Fund

Following the Supreme Court, which "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole," *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980), the Fifth Circuit has applied the "common fund" doctrine for decades. *See Barton v. Drummond Co.*, 636 F.2d 978, 982 (5th Cir. 1981) ("it is well settled that the 'common benefit' or 'common fund' equitable doctrine allows for the assessment of attorneys' fees against a common fund created by the attorneys' efforts"); *see also, e.g., Burford v. Cargill, Inc.,* No. 05-0283, 2012 WL 5471985, at *1-2 (W.D. La. Nov. 8, 2012); *In re Bayou Sorrel Class Action*, No. 6:04cv1101, 2006 WL 3230771, at *3 (W.D. La. Oct. 31, 2006).

---

[7] In support of these applications, Lead Plaintiffs also submit: (a) Declaration of Laurence Rosen on Behalf of The Rosen Law Firm, P.A. Concerning Attorneys' Fees and Expenses, attached as Exhibit 4 to the Kim Decl. ("Rosen Decl."); (b) Declaration of Nicholas I. Porritt, Esq. on behalf of Levi & Korsinsky LLP Concerning Attorneys' Fees and Expenses, attached as Exhibit 5 to the Kim Decl. ("Porritt Decl."); (c) Declaration of James Gascoyne on Behalf of Gascoyne & Bullion, P.C., attached as Exhibit 6 to the Kim Decl. ("Gascoyne Decl."); and (d) Declaration of R. Dean Gresham on behalf of Gresham P.C. Concerning Attorneys' Fees and Expenses, attached as Exhibit 7 to the Kim Decl. ("Gresham Decl.").

Courts have also recognized that, in addition to providing just compensation, awards of attorneys' fees from a common fund serve to encourage skilled counsel to undertake risky and complex litigation to seek redress for damages inflicted on entire classes of persons. *See, e.g., Jenkins v. Trustmark Nat'l Bank,* 300 F.R.D. 291, 307 (S.D. Miss. 2014); *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000). Indeed, the Supreme Court has emphasized that private securities cases, such as this litigation, are "'an indispensable tool with which defrauded investors can recover their losses' – a matter crucial to the integrity of domestic capital markets." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 n.4 (2007) (quoting *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 81 (2006)). Accordingly, common fund fee awards encourage and support meritorious class actions and thereby promote private enforcement of, and compliance with, the federal securities laws.

### B. The Court Should Award Attorneys' Fees Using the Percentage of Recovery Method

"In common fund cases, courts typically use one of two methods for calculating attorneys' fees: (1) the percentage method, in which the court awards fees as a reasonable percentage of the common fund; or (2) the lodestar method, in which the court computes fees by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate and, in its discretion, applying an upward or downward multiplier." *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 642-43 (5th Cir. 2012). "[D]istrict courts in this Circuit regularly use the percentage method blended with a *Johnson* reasonableness check, and for some it is the 'preferred method.'" *Id.* at 643 (citing *Johnson v. Ga. Highway Express,* 488 F.2d 714, 717-19 (5th Cir. 1974)); *see also Schwartz v. TXU Corp.,* No. 3:02-CV-2243-K, 2005 WL 3148350, at *25 (N.D. Tex. Nov. 8, 2005) (collecting cases and stating that "the percentage method is widely used … throughout the Fifth Circuit in common fund cases").

Although either method may be utilized, "[t]he percentage-of-recovery method is generally favored [over the lodestar method] in common fund cases because it allows courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure.'" *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005) (quoting *In re Prudential Ins. Co.*, 148 F.3d 283, 333 (3d Cir. 1998)); *Gunter*, 223 F.3d at 198. In addition to "align[ing] the interests of class counsel with those of the class members," the percentage method also "allows for easy computation." *Union Asset Mgmt.*, 669 F.3d at 643. Conversely, the lodestar method has been called "difficult to apply, time-consuming to administer, inconsistent in result, and capable of manipulation." Manual on Complex Litigation (4th) §14.121; *Schwartz*, 2005 WL 3148350 at *25 ("Numerous courts and commentators have stated that the percentage method is vastly superior to the lodestar method for a variety of reasons, including an incentive for counsel to 'run up the bill' and the heavy burden that calculation under the lodestar method places upon the court.").[8]

Additionally, the Private Securities Litigation Reform Act ("PSLRA") provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. §78u–4(a)(6). "[T]he PSLRA has made percentage-of-

_____

[8] *See* Report of Third Circuit Task Force: Court Awarded Attorney Fees, 108 F.R.D. 237, 246-49 (1986) (identifying a number of deficiencies with the lodestar method, including: (1) increasing the workload of the judicial system; (2) lack of objectivity; (3) a sense of mathematical precision unwarranted in terms of the realities of the practice of law; (4) ease of manipulation by judges who prefer to calculate the fees in terms of percentages of the settlement fund; (5) encouraging duplicative and unjustified work; (6) discouraging early settlement; (7) not providing judges with enough flexibility to award or deter lawyers so that desirable objectives, such as early settlement, will be fostered; (8) providing relatively less monetary reward to the public interest bar; and (9) confusion and unpredictability in administration.); *see also In re Educ. Testing Serv. Praxis Principles of Learning & Teaching: Grades 7-12 Litig.,* 447 F. Supp. 2d 612, 628-69 (E.D. La. 2006) (discussing the pervasive criticism of the lodestar method of calculating attorneys' fees).

recovery the standard for determining whether attorneys' fees are reasonable." *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 188 n.7 (3d Cir. 2005)); *see also Union Asset Mgmt.*, 669 F.3d at 643 (noting the "near-universal adoption of the percentage method in securities cases" following the passage of the PSLRA).

Finally, the Court could "conduct a rough lodestar cross check as is the customary practice to ensure that the requested amount of attorney's fees is reasonable." *Evans v. TIN, Inc.*, Civil Action No. 11-2067, 2013 WL 4501061, at *6 (E.D. La. Aug. 21, 2013). Given the fact that this securities class action is a "paradigmatic common fund case," *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 852, 860 (W.D. Pa. 1995) (internal quotation omitted), Plaintiffs' Counsel respectfully submits that the Court should apply the percentage-of-fund method, cross-checked against the lodestar.

### C. An Award of 33 1/3% of the Gross Settlement Fund Is Appropriate

Under the percentage-of-recovery method, the Court determines the benchmark percentage to be applied to the actual monetary value conferred to the class members by the settlement. *Burford,* 2012 WL 5471985, at *1. "After setting the benchmark, the Court applies the *Johnson* factors to determine whether a positive or negative adjustment of the benchmark is warranted." *Id.* at *1 (internal quotation omitted). Here, the value of the settlement is $4,500,000 in cash, plus interest earned from the date the settlement funds were deposited in the escrow account. Plaintiffs' Counsel respectfully submit that a benchmark percentage of one-third be applied without adjustment.

"[D]istrict courts in the Fifth Circuit have awarded percentages of approximately one-third contingency fee." *Burford*, 2012 WL 5471985, at *2 (quoting *In re Combustion, Inc.*, 968 Supp. 1116, 1133 (W.D. La. 1997)); *Jenkins*, 300 F.R.D. at 300 ("it is not unusual for district

courts in the Fifth Circuit to award percentage of approximately one third").[9]  Recently, courts in

the Fifth Circuit have set the "benchmark percentage" at, and awarded, one third of the common

fund. *Burford,* 2012 WL 5471985 at *2; *see also Bayou Sorrel,* 2006 WL 3230771 at *7

(awarding 36% of the common fund); *In re Combustion, Inc.,* 968 F. Supp. 1116, 1156 (W.D.

La. 1997) (awarding fee of 36% of $127 million settlement). Accordingly, there is ample

precedent from courts within the Fifth Circuit, as well as nationwide survey evidence, to support

the requested fee. *See Jenkins*, 300 F.R.D. at 307 (awarding one third of the settlement fund);

*Schwartz*, 2005 WL 3148350, at *27 (collecting cases and stating that "courts throughout this

Circuit regularly award fees of 25% and more often 30% or more of the total recovery under the

percentage-of-the recovery method"); *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942,

972 (E.D. Tex. 2000) ("based on the opinions of other courts and the available studies of class

action attorneys' fees awards (such as the NERA study), this Court concludes that attorneys' fees

in the range from twenty-five percent (25%) to thirty-three and thirty-four one-hundredths

percent (33.34%) have been routinely awarded in class actions. Empirical studies show that,

regardless whether the percentage method or the lodestar method is used, fee awards in class

actions average around one-third of the recovery.").

### D.    Application of the *Johnson* Factors Supports Lead Counsel's Request for a 33 1/3% Fee

In *Johnson*, 488 F.2d at 717-719, the Fifth Circuit set forth a number of factors to be

considered in determining the reasonableness of class counsel's fee request:

> (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the
> skill required to perform the legal service adequately; (4) the preclusion of other
> employment by the attorney because he accepted this case; (5) the customary fee

---

[9] *See also* Denise N. Martin, Vinita M. Juneja, Todd S. Foster & Frederick C. Dunbar, *Recent Trends IV: What Explains Filings and Settlements in Shareholder Class Actions?* 12-13 (NERA Economic Consulting, 1996) (surveying data from 433 securities class actions and concluding that: "[r]egardless of case size, fees average approximately 32 percent of the settlement.").

for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*See Union Asset Mgmt.*, 669 F.3d at 642 n.25. "The relevance of each of the *Johnson* factors will vary in any particular case, and, rather than requiring a rigid application of each factor, the Fifth Circuit has left it to the lower court's discretion to apply those factors in view of the circumstances of a particular case." *Schwartz*, 2005 WL 3148350 at *28; *see also In re Catfish Antitrust Litig.*, 939 F. Supp. 493, 502 (N.D. Miss. 1996) ("not every [*Johnson*] factor need be necessarily considered"). Here, because each of the relevant *Johnson* factors weighs in favor of the requested fee, a fee of 33 1/3%—which represents a reasonable 1.19 multiplier of Plaintiffs' Counsel's lodestar—of the common fund is justified.

### 1. The Time and Labor Required

As detailed herein, and in the Final Approval Memorandum, Plaintiffs' Counsel prosecuted the Action on a wholly contingent basis. Plaintiffs' Counsel's litigation efforts on behalf of the Class include: (a) conducting a detailed investigation of potential claims against Defendants that resulted in the filing of Plaintiffs' First Amended Class Action Complaint, Plaintiffs' Second Amended Class Action Complaint, and the operative Plaintiffs' Third Amended Class Action Complaint in this Action; (b) moving, pursuant to the PSLRA for appointment of Lead Plaintiff and Plaintiffs' Counsel; (c) overseeing investigative interviews of witnesses, including several former executives, identifying certain witness and developed leads; (d) engaged in extensive document discovery and deposition discovery; (e) opposing Defendants' motions to dismiss; (f) representing the Class' claims in KiOR's bankruptcy including preserving certain claims and insurance proceeds in that regard, monitoring KiOR's bankruptcy proceedings, attending KiOR's bankruptcy hearings, filing an objection to KiOR's

Plan of Reorganization, and defending the Class in KiOR's bankruptcy trustee's adversary proceeding; and (h) consulted with experts on damages. Kim Decl. at ¶ 6.

Additionally, the process by which this action was resolved also involved intense diligent and effort. Settlement was only reached after Plaintiffs' Counsel conducted thorough discovery which aided in the preparation of a comprehensive mediation statement and negotiated with Defendants during a full-day mediation. Plaintiffs' Counsel then negotiated the specific terms of the settlement agreement and eventually drafted the settlement papers. Kim Decl. at ¶¶ 45-47. The efforts that were required to complete these tasks were significant and undertaken at risk, given the contingency-based nature of Plaintiffs' Counsel's representation. To date, Plaintiffs' Counsel has spent 2,053.08 hours prosecuting this case. *See* Exhibits 4-7 to Kim Decl. Plaintiffs' Counsel have also incurred $177,695.18 in, as yet, unreimbursed litigation expenses. *Id*. These expenses were required to achieve the settlement.

In addition, the timing of the Settlement itself is a benefit that Plaintiffs' Counsel has conferred on the Class. Achieving a beneficial outcome for the Class at this stage of the litigation, weighs in favor of awarding the requested fee. *See Schwartz*, 2005 WL 3148350 at *29 (efficiency and effectiveness should be rewarded) (*citing In re Xcel Energy, Inc. Sec. Litig.,* 364 F. Supp. 2d 980, 992 (D. Minn. 2005) (early settlements are consistent with the purposes of the Federal Rules of Civil Procedures)); *Di Giacomo v. Plains All Am. Pipeline,* No. Civ.A. H-99-4137, 2001 WL 34633373, at *11 (S.D. Tex. Dec. 19, 2001) (an emphasis on the number of hours would penalize counsel for obtaining early settlement). As such, the Court should find that a settlement at this stage benefits the Class, and that the labor and time Lead Counsel invested in this case supports the requested fee.

## 2.     Novelty and Difficulty of the Issues

The second *Johnson* factor also favors granting Plaintiffs' Counsel's request for attorneys' fees. As a general matter, securities litigation is "notoriously difficult and unpredictable." *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983) (internal quotation omitted); *see also In re Suprema Specialties, Inc. Sec. Litig.*, No. 02-168(WHW), 2008 WL 906254, at *11 (D.N.J. Mar. 31, 2008) ("this case's complexity is undeniable, given its facts and area of law, securities law."). In addition, as described below, this action involved complex issues of law and fact arising from allegations of KiOR's materially false and misleading.

### (a)     Liability Could Be Difficult to Prove

Lead Plaintiffs bear the burden of establishing each of the elements of the claims brought against Defendants under the Securities Exchange Act of 1934 ("Exchange Act"). Although Lead Plaintiffs believe the allegations of the operative TAC would ultimately translate into a strong case for liability after the completion of discovery, Lead Plaintiffs are also aware that many risks were involved in proving their claims. *See Schwartz*, 2005 WL 3148350 at *29 ("Federal Securities class action litigation is notably difficult and notoriously uncertain."). Indeed, Lead Plaintiffs faced numerous hurdles to establishing liability. These legal challenges included establishing that Defendants made misstatements or omissions of material fact during the alleged Class Period, that Defendants acted with scienter with regards to the claims under the Exchange Act, and the need to prove loss causation. Post-PSLRA rulings make clear that the risk of failing to establish these elements–and receiving no recovery at all–has increased exponentially since the statute's enactment in 1995. *See In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA"); *see also Goldstein v. MCI WorldCom*, 340 F.3d 238 (5th Cir. 2003) (affirming dismissal with prejudice of securities fraud class action

complaint against Bernard Ebbers and WorldCom involving a massive securities fraud with a $685 million write-off of accounts receivable, for which Ebbers was later convicted).

Defendants vigorously asserted that they did not make misstatements about the operations at the Columbus Facility as what they publically announced was true. Additionally, Defendants argued that Lead Plaintiffs would be unable to prove scienter because they did not knowingly or recklessly misrepresent the issues at the Columbus Facility. Simply put, establishing these elements could be a substantial hurdle – one which many plaintiffs have failed to overcome. *See Bergquist v. FyBX Corp.*, No. Civ.A. 02-722, 2003 WL 22081368, at *10-11 (E.D. La. Aug. 29, 2003) (granting summary judgment to defendants, dismissing federal securities claims); *see also In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689(SAS), 2003 WL 22244676, at *8 (S.D.N.Y. Sept. 29, 2003) (noting difficulty of proving scienter); *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 643 (5th Cir. 2005) (scienter implicates "not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care.").

(b)    **Obtaining Class Certification and Proving Recoverable Damages Could Be Difficult**

To obtain a class-wide recovery, Lead Plaintiffs would be required to obtain – and retain – class certification by proving that Defendants made materially false and misleading statements during the Class Period and that the Company's shares traded in an efficient market. Defendants could contest class certification at the time of the original motion, at summary judgment and again at trial. *See Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398 (2014) (defendants may rebut the presumption of reliance at the class certification stage). To prevail at trial, Lead Plaintiffs would also be required to prove the amount of the artificial inflation of KiOR stock throughout the Class Period and that it was removed by multiple, partial disclosures

of the true facts. *See Lindsey v. Memphis-Shelby Cty. Airport Auth.,* 229 F.3d 1150 (6th Cir. 2000) (approving settlement and highlighting risk of proving damages).

Loss causation and damages are not elements of a securities claim that are within the knowledge of the jurors to consider on their own. Consequently, following a battle of experts on these issues, there is a significant risk that the jury would award substantially less damages than the maximum damages identified by Plaintiffs' Counsel's expert. The figures proffered by Lead Counsel's expert are based on Plaintiffs' Counsel's theory of liability and assume that every element of the Class's liability and damages theories are accepted by the jury as being correct and recoverable, all of which Defendants vigorously dispute. Thus, the viability of these preliminary estimates as an actual calculation for damages could be affected by many factors that arise in the litigation, including Defendants' rebuttals and defenses to Lead Plaintiffs' damage calculations and expert testimony. Before the jury even considers conflicting testimony, it is possible that Lead Plaintiffs' proposed expert testimony could be the subject of a *Daubert* motion or be deemed otherwise inadequate, further supporting the guaranteed Settlement. *See In re Zonagen, Inc. Sec. Litig.*, 322 F. Supp. 2d 764, 782 (S.D. Tex. 2003) (granting summary judgment where plaintiff's expert report was insufficient to establish loss causation as a matter of law).

While Plaintiffs' Counsel believes that there exists a firm basis for an expert to opine on the measure and amount of total damages, it is possible that, in the unavoidable "battle of experts," a jury might disagree with the Class's expert, or merely find Defendants' expert more persuasive. *See, e.g., Streber v. Hunter,* 221 F.3d 701, 726 (5th Cir. 2000), *reh'g en banc denied*, 233 F.3d 576 (5th Cir. 2000) (jury can believe whichever expert it finds more credible); *In re Warner Commc'ns. Sec. Litig.,* 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985), *aff'd*, 798 F.2d

35 (2d Cir. 1986) ("In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions."). Consequently, "[a]lthough Plaintiffs maintain they would likely be successful on the merits at trial," the complicated nature of the case and uncertainty of prevailing supports approval of the settlement. *Shaw*, 91 F. Supp. 2d at 960.

### 3. Skill Required: the Experience, Reputation, and Ability of the Attorneys

The third and the ninth *Johnson* factors, the skill required and the experience, reputation, and ability of the attorneys, also support the requested fee award. Plaintiffs' Counsel have many years of experience in complex federal civil litigation, particularly the litigation of shareholder, securities, and other class actions. *See* Rosen Decl., at ¶ 2; Porritt Decl. at ¶ 2; Gascoyne Decl., at ¶ 2; and Gresham Decl, at ¶ 2. Plaintiffs' Counsel's experience enabled them to conduct extensive investigation into the relevant facts and identify the complex issues of accounting and damages involved in this case, and formulate strategies to prosecute it effectively. Based upon Plaintiffs' Counsel's diligent efforts, and their skill and reputations, they were able to negotiate a very favorable result.

It is also important to recognize that Defendants were represented by highly-experienced lawyers from prominent and well-respected national law firms, Wilmer Cutler Pickering Hale and Dorr LPP and Jones Day. The ability of Plaintiffs' Counsel to obtain such a favorable settlement for Lead Plaintiffs and the Class in the face of such formidable legal opposition confirms the quality of their representation. Accordingly, this factor also supports the requested percentage. *See Billitteri v. Sec. Am., Inc.*, No. 11-cv-00191, 2011 WL 3585983, at *7 (N.D. Tex.

Aug. 4, 2011) ("[B]ecause of the extremely effective work of opposing counsel … The skill required here … certainly justifies the contemplated award.").

### 4. The Preclusion of Other Employment

As previously noted, Plaintiffs' Counsel spent 2,053.08 hours litigating this case on behalf of Lead Plaintiffs and the Class[10]. Rosen Decl. at ¶ 6; Porritt Decl. at ¶ 6; Gascoyne Decl. at ¶ 6; Gresham Decl. at ¶ 5. This is time counsel could have devoted to other matters. Accordingly, this factor further supports the requested fee. See *Burford*, 2012 WL 5471985, at *3 ("The affidavits of Class Counsel prove that while this case did not preclude them from accepting other work, they were often times precluded from working on other cases due to the demands of the instant matter … This factor weighs in favor of a substantial fee award.").

### 5. The Customary Fee for Similar Work in the Community

As set forth in Section II.C, *supra*, the one-third fee requested in this case is commonly awarded for similar work in the Fifth Circuit. Therefore, this factor weighs in favor of approving a fee of one-third of the common fund.

### 6. Whether the Fee Is Fixed or Contingent

Plaintiffs' Counsel undertook this class action on a contingency-fee basis carried both the substantial out-of-pocket costs of litigation and the risk of not being paid for their services or expense outlays for close to four years. Contingency risk alone is a factor supporting the requested fee. As the Fifth Circuit has stated, "[l]awyers who are to be compensated only in the event of victory expect and are entitled to be paid more when successful than those who are assured of compensation regardless of result." *Jones v. Diamond,* 636 F.2d 1364, 1382 (5th Cir. 1981), overruled on other grounds by *Int'l Woodworkers of Am., AFL-CIO & Its Local No. 5-376*

---

[10] If the Settlement is approved, additional time will be spent ensuring that the Settlement is properly distributed to the Class.

*v. Champion Int'l Corp.,* 790 F.2d 1174 (5th Cir. 1986). Indeed, the risk of loss in this case is not illusory. As stated above, securities claims are extremely complicated and require expert testimony to prove. Success is never assured. Despite the risk that Plaintiffs' Counsel's significant time and effort could go uncompensated, Plaintiffs' Counsel diligently prosecuted the Class's claims. Consequently, this factor weighs in favor of approving Plaintiffs' Counsel's fee request. *See Jenkins*, 300 F.R.D. at 309.

### 7. Time Limitations Imposed by the Client or the Circumstances

This factor does not pertain to this case.

### 8. The Amount Involved and the Results Obtained

As discussed above, assuming that every element of the Class's liability and damage theories were accepted by the jury as being correct and recoverable, a preliminary damage study determined that the maximum recovery taking into account the statistically significant stock drops would be $20,997,664. Thus, Plaintiffs' Counsel has recovered approximately 21.4% of the class's maximum provable damages, and far more than the damages Defendants asserted the Class suffered (*i.e.*, $0) given their belief that Lead Plaintiffs would be unable to demonstrate the falsity and materiality of the alleged misstatements. In light of the many aforementioned risks involved in this litigation, this is an excellent result. The achieved here is further heightened by the fact that KiOR is a bankrupt company. *See In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 804 (S.D. Tex. 2008) ("The typical recovery in most class actions generally is three-to-six cents on the dollar.").

### 9. The Undesirability of the Case

In certain instances, the "undesirability" of a case can be a factor in justifying the award of a requested fee. While Plaintiffs' Counsel did not consider this case to be "undesirable," there are substantial risks inherent in financing and prosecuting contingent litigation of this type and

Plaintiffs' Counsel knew that they would have to spend substantial time and money and face significant risks without any assurance of being compensated for their efforts. Thus, the "undesirability" of the case also weighs in favor of the requested fee. *See, e.g., Billitteri*, 2011 WL 3585983, at *8 (where a case "raised particularly difficult issues," including the risk of "no recovery whatsoever," this factor supported an increase in the fee); *Braud v. Transp. Serv. Co. of Ill.*, No. 05-1898, 2010 WL 3283398, at *13 (E.D. La. Aug. 17, 2010) (given the "risk of non-recovery" and the burdens of "undertaking expensive litigation against . . . well-financed corporate defendants on a contingent fee," the Court found that "undesirability in this case warrants an increase in the fee award").

### 10. The Nature and Length of the Professional Relationship with the Client

Plaintiffs' Counsel has represented Lead Plaintiffs in this litigation since 2013. Lead Plaintiffs have been actively involved in this litigation and approved and support the Settlement. Throughout the litigation, Plaintiffs' Counsel has been in communication with Lead Plaintiffs apprising of them of the status of the case as well as reviewing and discussing pleadings, motions, briefs, and discovery.

### 11. Awards in Similar Cases

As discussed above, the requested fee of 33 1/3% is consistent with awards granted in class action cases. Hence, this factor supports the requested fee award.[11]

---

[11] *See In re Combustion*, 968 F. Supp. at 1136, 1142 (awarding 36% on a settlement fund of $127,396,000); *Teichler v. DSC Commc'ns Corp.*, CA 3–85–2005–T (N.D. Tex. Oct. 22, 1990) ("plaintiffs' counsel awarded $10 million on a settlement of $30 million in securities class action") (cited in *In re Catfish Antitrust Litig.*, 939 F. Supp. at 500); *Kleinman v. Harris*, Civil Action No. 3:89–CV–1869–X (N.D. Tex. June 21, 1993) ("approving fee of approximately one-third of benefit achieved of $1,170,000") (cited in *In re Catfish Antitrust Litig*., 939 F. Supp. at 500); *Faircloth v. Certified Fin. Inc.*, No. Civ. A. 99-3097, 2001 WL 527489, at *9, 12 (E.D. La. May 16, 2001) (awarding 35% on a $1,534,321 settlement fund); *In re Vioxx Prod. Liab. Litig.*, MDL No. 1657, 2013 WL 5295707, at *4-*5 (E.D. La. Sept. 18, 2013) (awarding 33%); *Finkel*

In sum, the eleven applicable *Johnson* factors all support Plaintiffs' Counsel's request for one-third of the Gross Settlement Fund as attorneys' fees. The percentage method, backed by the *Johnson* factors, therefore supports the granting of Plaintiffs' Counsel's requested fees.

### E.    The Class's Reaction to The Fee Request

The claims administrator undertook a robust program to provide notice to potential Settlement Class Members, publishing notice on both *GlobeNewswire* and *Investors' Business Daily* and mailing 22,786 notices throughout the world. *See* Bravata Decl. at ¶¶ 6,10. To date, not one Class member has objected to the Settlement or the requested attorney's fees. *Id.* at ¶ 13. The Notice sent to the Class expressly stated that Plaintiffs' Counsel could seek one third of the Settlement Amount. Although not a *Johnson* factor, many courts have recognized that the absence, or a minimal number, of objections to a fee request is significant evidence that the requested fee is fair. *See Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (even when 29 members of a 281 person class (i.e., 10% of the class) objected, the response of the class as a whole "strongly favors [the] settlement"); *In re Rent-Way Sec. Litig.,* 305 F. Supp. 2d 491, 515 (W.D. Pa. 2003) ("the absence of substantial objections by other class members to the fee application supports the reasonableness of Lead Counsels' request").

---

*v. Docutel/Olivetta Corp.*, CA3– 84–0566–T (N.D. Tex. Feb. 23, 1990) ("awarding fees amounting to 33% of settlement fund") (cited in *In re Catfish Antitrust Litig.*, 939 F. Supp. at 500); *In re Lomas Fin. Corp. Sec. Litig.*, No. CA–3–89–1962–G (N.D. Tex. Jan. 28, 1992) ("approving fee of almost one-third of benefit") (cited in *In re Combustion*, 968 F. Supp. at 1139); *Kitson v. Bank of Edwardsville*, No. 08-507, 2010 WL 331730, at *2 (S.D. Ill. Jan. 25, 2010) (awarding 33% of $3,415,000 settlement fund); *In re DrKoop.com*, No. 00-CA-427-JRN, Order and Final Judgment, ECF No. 48 (W.D. Tex. Nov. 14, 2001) (fee equal to 33-1/3% of total recovery, plus expenses); *Levitin v. A Pea in the Pod, Inc.*, No. 3:94-CV-0247, Final Judgment and Order of Dismissal With Prejudice, ECF No. 213 (N.D. Tex. Mar. 27, 1998) (fee award equal to 40% of recovery, plus expenses); *Branca v. First USA Paymentech, Inc.*, No. 3:97- CV-2507-L, Order and Final Judgment, ECF No. 59 (N.D. Tex. Jan. 4. 2001) (fee equal to 33-1/3% of total recovery, plus expenses).

**F.     A Lodestar Cross-Check Confirms the Reasonableness of the Requested Fee**

In addition to applying the percentage approach to determine attorneys' fees in common fund cases like this one, courts in this Circuit often apply the lodestar method as a "rough cross check" to confirm that the fee determined under the percentage approach is reasonable.  *See Evans*, 2013 WL 4501061, at *6; *Burford*, 2012 WL 5471985 at *6 n.1. The lodestar multiplier is calculated by dividing the attorneys' fees that class counsel seeks by class counsel's associated lodestar. *Id*. at *6 n.1. In performing a lodestar analysis, a district court may rely on summaries submitted by the attorneys and need not review actual billing records. *See Turner v. Murphy Oil USA, Inc*., 472 F. Supp. 2d 830, 867 (E.D. La. 2007) ("The lodestar cross-check calculation need entail neither mathematical precision nor bean counting. For example, a court performing a lodestar cross-check need not scrutinize each time entry; reliance on representations by class counsel as to total hours may be sufficient").

Here, the cumulative number of hours expended by Plaintiffs' Counsel is 2,053.08, and the resulting lodestar for the services performed is $1,262,463.

"In the Fifth Circuit, courts set the lodestar multiplier by applying the *Johnson* factors." *Union Asset Mgmt.*, 669 F.3d at 643 n.26.  Here, eleven of the twelve *Johnson* factors apply – and all of them favor an upward adjustment of the lodestar to reflect the significant risks undertaken by Lead Counsel herein to obtain a substantial benefit for the Settlement Class.  The requested fee of $1,500,000 thus equates to a multiplier of approximately 1.19, based upon the lodestar figure of $1,262,463. This multiplier is well within the range of reasonableness.

Multipliers of "1 to 4 [are] typically approved by courts within [the Fifth] circuit." *Burford*, 2012 WL 5471985, at *6 n.1; *Di Giacomo*, 2001 WL 34633373, at *11 (stating same and approving 5.3 multiplier); *In re Sumitomo Copper Litig*., 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999) ("[I]n recent years multipliers of between 3 and 4.5 have been common in federal

securities cases.") (internal quotation omitted). Accordingly, the attorneys' fees sought are plainly reasonable using a lodestar cross-check.

### G. Plaintiffs' Counsel's Expenses Were Reasonably And Necessarily Incurred in the Prosecution of this Action

Plaintiffs' Counsel also requests the reimbursement of $177,695.18 in expenses reasonably and necessarily incurred while prosecuting this action. *City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132(CM)(GWG), 2014 WL 1883494, at *19 (S.D.N.Y. May 9, 2014); *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695(CM), 2007 WL 4115808, at *10 (S.D.N.Y. Nov. 7, 2007); *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987).

The majority of the expenses are attributable to expert, consultant, investigator, and travel fees. *See* Kim Decl. at ¶¶ 87-90. These were complex issues, particular in light of the series of partial corrective disclosures and the scope and magnitude of the restated financial results. Furthermore, they serve as the central basis of Lead Plaintiffs' allegations of Defendants' violations of federal securities laws. Plaintiffs' Counsel also retained a damages expert to consult on Defendants' assertion that the alleged misstatement Lead Plaintiffs identified were not material and the declines in KiOR stock were attributable to the statements about the Columbus Facility. Kim Decl. at ¶ 89; Furthermore, a private investigator was retained to interview percipient witnesses as part of Plaintiffs' informal investigation and in order to prepare the pleadings in this case. Kim Decl. at ¶ 88. Travel expenses are attributable to the out of state travel for Plaintiffs' Counsel to attend court hearings, depositions, and the mediation. Kim Decl. at ¶ 90.

The supporting declarations have attested to the accuracy of these expenses. *See* Rosen Decl. at ¶ 7; Porritt Decl. at ¶ 7; Gascoyne Decl. at ¶ 7; Gresham Decl. at ¶ 6. Because the

expenses were incurred with no guarantee of recovery, Plaintiffs' Counsel had a strong incentive to keep them at a reasonable level and did so. Plaintiffs' Counsel made a concerted effort to avoid unnecessary expenditures and economized wherever possible. All were essential to achieving the Settlement and should be reimbursed.[12] Additionally, the Notice of Class Action Settlement informed Class Members that Plaintiffs' Counsel would seek reimbursement of expenses up to $200,000 and, to date, no objection to the expense application has been filed. Bravata Decl. ¶ 13. The requested expenses should, therefore, be awarded. *See In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 736 (E.D. Pa. 2001) ("plaintiffs seek reimbursement of expenses … which they have detailed in their submissions to us. These out of-pocket expenses … are compensable … they are also unobjected to and, in our judgment, reasonable"). Consequently, Plaintiffs' Counsel respectfully requests the Court approve the expense reimbursement request to be paid from the common fund in addition to the award of attorneys' fees. *See Jenkins*, 300 F.R.D. at 310-11 (awarding costs in addition to the percentage fee); *Di Giacomo*, 2001 WL 34633373 at *13 (same); *Faircloth*, 2001 WL 527489 at *12 (same).

## III.   THE PROPOSED LEAD PLAINTIFF AWARDS SHOULD BE GRANTED

The PSLRA permits plaintiffs to seek an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class …" 15 U.S.C. §78u-4(a)(4). *See Hicks v. Stanley,* No. 01 CIV. 10071 (RJH), 2005 WL 2757792, at *10 (S.D.N.Y. Oct. 24, 2005) (courts "routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well

---

[12] *See, e.g., In re Vitamin C Antitrust Litig.*, No. 06-MD-1738(BMC)(JO), 2012 WL 5289514, at *11 (E.D.N.Y. Oct. 23, 2012) ("[T]he Court concludes that counsel's request for reimbursement of its litigation expenses is reasonable. The principal expenses for which Class Counsel seeks reimbursement are expert witness costs, deposition reporters and transcripts, translation and review of Chinese-language documents, copying, travel, research, and court-filings—all of which are appropriate for reimbursement.").

as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place").

Lead Plaintiffs have performed their duties with attentiveness and diligent oversight. This included reviewing all pleadings, motions, and other documents, frequently communicating with counsel concerning the status of the case, court documents, strategy, and settlement discussion, as well as preparing for and being deposed. Additionally, Lead Plaintiff Dave Carlton personally attended the mediation held on October 19, 2016. In light of the work done by Lead Plaintiffs, the amounts requested are eminently reasonable. Moreover, the request for the Lead Plaintiffs award here is the same or less than awards granted in other cases, and there have been no objections to their payment. *See Burford*, 2012 WL 5471985, at *6 (awarding named plaintiffs up to $15,000); *In re Star Scientific, Inc., Securities Litigation,* 3:13-cv-00183 (E.D.Va)(Dkt. No. 143) (awarding lead plaintiff $9,500 each); *In re Catfish Antitrust Litig.*, 939 F. Supp. at 504 (awarding each of the named plaintiffs $10,000); *Aranaz, et al., v. Catalyst Pharmaceutical Partners, Inc., et al.,* 1:13-cv-23878 (S.D.Fl.)(Dkt. No. 153)(awarding lead plaintiffs $10,000 each).[13] Accordingly, Lead Plaintiffs Dave Carlton and Sharon Kegerreis respectfully request that the Court grant their request for total award of $15,000 or $7,500 each.

## IV.  CONCLUSION

For all the reasons stated above, in the Final Approval Memorandum, in any reply papers that may be filed in support of either motion, and at the Settlement Hearing, Lead Plaintiffs and Plaintiffs' Counsel respectfully request that the Court: (a) award attorneys' fees in the amount of

---

[13] *See also In re Xcel Energy*, 364 F. Supp. 2d at 1000  ($100,000 collectively awarded to lead plaintiff group as reimbursement); *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 265 (E.D. Va. 2009) (awarding $42,000 to class representative as reimbursement for expenses incurred in reviewing documents, traveling, and attending mediation/court session); *In re Marsh & McLennan Co., Inc. Sec. Litig.*, No. 04 cv 08144, 2009 WL 5178546, at *21 (S.D.N.Y. Dec. 23, 2009) (awarding a combined $214,657 to two institutional lead plaintiffs).

33 1/3% of the Gross Settlement Fund, *i.e.* $1,500,000 in cash; (b) approve reimbursement of $177,695.18 in aggregate expenses; (c) grant an award to Lead Plaintiffs in the amount of $15,000 in total.

Dated: April 26, 2017                 Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

/s/ Phillip Kim
Phillip Kim, Esq. (*pro hac vice*)
Laurence M. Rosen, Esq. (*pro hac vice*)
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

**LEVI & KORSINSKY LLP**
Nicholas I. Porritt, Esq. (*pro hac vice*)
Adam M. Apton, Esq. (*pro hac vice*)
1101 30th Street NW, Suite 115
Washington, D.C. 20007
Telephone: (202) 524-4290
Fax: (202) 333-2121
Email: nporritt@zlk.com
Email: aapton@zlk.com

*Lead Counsel for Lead Plaintiffs and the Class*

**GASCOYNE & BULLION, P.C.**
James Gascoyne
77 Sugar Creek Center Blvd.
Sugar Land, Texas 77478
Tel: 281-340-7000

*Liaison Counsel for Lead Plaintiffs and Class*

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th of April, 2017, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ Phillip Kim
Phillip Kim